103 So.2d 449

**THOMAS W. HOOLEY & SONS**

v.

**ZURICH GENERAL ACCIDENT AND LIA-
BILITY INSURANCE COMPANY, Ltd.**

No. 43537.

May 26, 1958.

Rehearing Denied June 27, 1958.

Dart, Guidry & Dart, Louis C. Guidry, New Orleans, for plaintiff-appellant.

Normann & Normann, New Orleans, for defendant-appellee.

TATE, Justice ad hoc.

Plaintiff partnership appeals from judgment dismissing its suit to recover a sum allegedly due, under a policy issued to it by defendant insurer, in reimbursement of damages to the property of another paid by plaintiff. The "Comprehensive General Liability Policy" in question insured plaintiff contractor against liability imposed by law upon said insured for damages because

of injury to property caused by accident. Excluded from coverage of the policy was property in the "care, custody or control" of the insured.

On January 16, 1953, during the term of the policy and while plaintiff was fulfilling its contact with the City of New Orleans to dismantle the statue of Robert E. Lee and the supporting stone column located in Lee Circle, a portion of the column fell from a crane and damaged a large ornamental cast-iron urn situated at the base of the monument, as well as some granite slabs.[1] By the terms of its contract the plaintiff partnership was liable for damages caused to City property during performance of the contract. The defendant further does not dispute that such damages amounted to $4,870, as demanded and proven by plaintiff.

Defendant seeks to evade liability under its insurance contract because: (a) the damaged property allegedly was under the "care, custody or control" of the plaintiff insured and thus excluded from coverage of the policy; and (b) plaintiff allegedly violated clauses of the policy prohibiting the insured from voluntarily settling or paying claims prior to final judgment obtained against it by the third person (the City) whose property was damaged. The trial court, in dismissing plaintiff's suit, sustained the latter defense.

■ As the District Court held, the attempted first defense that the damaged property was within the "care, custody or control" exclusion clause is clearly without factual or legal merit.

Plaintiff's dismantling contract concerned the Lee statue and its supporting column and did not include the base of the monument (upon which the column was situated) or the ornamental urns at the corners of the base, accidental damage to one of which urns is the subject of the present suit.

■ The uniform jurisprudence holds that damaged property or premises merely incidental or adjacent to the contracted object upon which work is being performed by the insured is not within the "care, custody or control" of the insured for purposes of the exclusion clause in question, even though he might be permitted access thereto during the performance of his contract. Boswell v. Travelers Indem. Co., 1956, 38 N.J.Super. 599, 120 A.2d 250, Maryland Cas. Co. v. Hopper, Tex.Civ.App.1950, 237 S.W.2d 411, Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 1950, 280 App.Div. 665, 116 N.Y.S.2d 876, A. T. Morris & Co. v.

---

1. In another suit growing out of this same accident, this Court held that plaintiff partnership rather than the lessor thereto of the crane, as between the two, was liable for the damages resulting from the accident. B. & G. Crane Service, Inc., v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369.

Lumber Mut. Cas. Ins. Co., 1937, 163 Misc. 715, 298 N.Y.S. 227, Cohen v. Keystone Mut. Cas. Co., 1943, 151 Pa.Super. 211, 30 A.2d 203.

The cases cited by defendant recognize this principle; although, on the basis of facts distinguishable from the present, recovery was denied to the insureds therein on the basis of the aforesaid exclusion clause. These cases found the damaged property therein to be within the "care, custody or control" of the insured as the actual subject of the insured's repair, installation, construction, or transportation contract, or as equipment actually used by the insured in the performance thereof. International Derrick & Equipment Co. v. Buxbaum, 3 Cir., 1957, 240 F.2d 536, Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 1952, 194 F.2d 173, L. L. Jarrell Construction Co. v. Columbia Cas. Co., D.C. 1955, 130 F.Supp. 436; Root Motor Co. v. Massachusetts Bonding & Ins. Co., 1932, 187 Minn. 559, 246 N.W. 118; Maryland Cas. Co. v. Holmsgaard, 1956, 10 Ill.App. 2d 1, 133 N.E.2d 910, and John G. Speirs & Co. v. Underwriters at Lloyd's London, 1948, 84 Cal.App.2d 603, 191 P.2d 124.

■ The defendant insurer's denial of coverage and liability upon such first

ground, in the face of the uniform jurisprudence and the uncontradicted facts, would seem to subject it to the penalties and attorney's fees as demanded by plaintiff's supplemental petition, as a refusal to pay a covered loss (after due proof thereof) which is "arbitrary, capricious, or without probable cause", LSA-R.S. 22:658.

Moreover, such assessment of penalties seems especially justified under the facts of the present case. *Before* the plaintiff entered upon the performance of the dismantling contract, upon specific inquiry by plaintiff's senior partner concerning the subject he was informed by defendant's underwriting agent (on the basis of underwriting information available to the latter, which of course was based upon the above jurisprudence) that portions of the premises such as that damaged were not within his "care, custody or control" so as to be excluded from the protection of the present policy.[2] The record further reflects that defendant insurer was informed of this circumstance by its agent. *After* the accident, as is also shown by the record, the service company retained by defendant insurer to investigate the claim, by written report, soon after the accident informed said insurer that the plaintiff insured had no

---

**2.** The purpose of this specific inquiry by the partner was to secure additional insurance protection if needed, which plaintiff did (although from another company) as to the property which was the subject of the contract, the statue and the supporting column, and thus was within his "care, custody or control" within the meaning the jurisprudence had assigned to said term for purposes of the exclusion clause of the present insurance policy.

care, custody or control of the damaged property in question.

However, despite the undoubted coverage by defendant's policy of the damages herein concerned, defendant insurer not only denies liability for penalties for its refusal to pay same, but denies liability for the damages themselves by a supplementary defense (sustained by the trial court) arising from the plaintiff insured's alleged violation of the "no action" clause [3] of defendant's insurance policy.

As to the circumstances upon which this defense is based, the undenied facts of the record show: *After* defendant insurer denied liability for the damages in question, plaintiff proceeded to repair the damage itself by amicable agreement with the City.[4] As defendant's underwriting agent stated, the damages were thus minimized, as the repair thereof was done "more economically * * * by him [Hooley] fixing it instead of letting the bid out", and of course the expenses of litigation were saved. Further, with the knowledge and approval of defendant's representatives, plaintiff contractor sought (although unsuccessfully—

see footnote 1 above) to shift ultimate legal responsibility for the present damages from itself (and thus from defendant insurer) and to the lessor of the crane involved.

Nevertheless, defendant insurer insists that recovery should be denied because, although it initially and consistently thereafter denied policy coverage as to the damages herein concerned, it never specifically refused to defend a suit brought by the owner of the damaged property against its insured—and indeed had no opportunity to do so because its insured settled the claim and avoided such suit.

Without the exception of a single American jurisdiction, it is noted in summary of a great number of cited cases in the Annotation, "Consequences of liability insurer's refusal to defend action against the insured upon the ground that claim upon which action is based is not within coverage of policy", 49 A.L.R.2d 694, at page 744, that:

"* * * an insurer's unjustified refusal to defend relieves the insured

---

3. "11. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the *insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured,* the claimant and the company. * * *" (Italics ours.)

4. In brief, counsel for defendant terms as "quaint" the plaintiff's reason therefor: "Mr. Hooley admitted that he proceeded to repair the damage and make a settlement personally with the City, so as *not* to jeopardize his business relations with the City of New Orleans and maintain its good will" (p. 35), rather than force the City to sue and obtain final judgment against plaintiff partnership.

from his contract obligation not to settle, and the insured is at liberty to make a reasonable settlement or compromise without losing his right to recover on the policy."

A practical reason for this holding is stated in St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 1906, 201 U. S. 173, at page 26 S.Ct. 400, at page 404, 50 L.Ed. 712, the grandfather case of this line of jurisprudence:

"* * * It would be stretching the words quoted [i. e., the 'no action' clause] to a significance equally hurtful to both parties, and probably equally absent from the minds of both, to read them as having within their scope an initial repudiation of liability by the defendant, and a requirement that, in that event, the plaintiff should be bound to try the case against itself, although it should be plain that by a compromise it could reduce its claim on the defendant as well as its own loss."

■■ Although most of the cases involved not only (as here) an unjustified denial of liability but also a specific refusal to defend an action brought against the insured, the reasoning therein as well as the equitable reasons therefor support the conclusion that by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the "no action" clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. Especially when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement to its insured of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.

Although this precise question has never previously been passed upon in any reported Louisiana decision, several cases from other jurisdictions wherein the policyholder compromised the contrary claim in advance of suit, following a denial of liability by the insurer or its inaction thereasto following notification as to said claim, specifically support our conclusion herein:

Albert v. Maine Bonding & Cas. Co., 1949, 144 Me. 20, 64 A.2d 27, (Cf., "A distinct denial of all liability by an insurance company is equivalent to a declaration that it will not pay even if the amount of loss is determined," 64 A.2d 29); Interstate Cas. Co. v. Wallins Creek Coal Co., 1915, 164 Ky. 778, 176 S.W. 217, L.R.A.1915F,

958 (Cf., Where the insurer "made up its own mind that it was not liable" and by inaction over several months "in effect denied its liability", "the insured had the right to treat this inaction of the insurance company as a denial of liability on its part, and to act on the assumption that it would further refuse to recognize its liability by failing to undertake to defend any suit that the injured party might bring if living, and to make the best settlement it could", 176 S.W. 220); Great American Indem. Co. v. City of Corpus Christi, TexCiv.App., 1946, 192 S.W.2d 917 (Cf., In rejecting the identical defense here tendered, the court stated that "the duty to defend suits does not exist independently of the duty to pay the loss from the liability imposed by law upon the assured should such liability be established. * * * The unequivocal denial of all liability to pay a loss under its insurance policy * * * disqualifies the [insurer] from defending a suit against the assured for the recovery of damages which the insurance company says is not covered by its policy", 192 S.W.2d 917, 919); Murphy & Co. v. Manufacturers' Cas. Co., 1926, 89 Pa.Super. 281 (Cf, "The insurance company's initial repudiation of the contract in denying liability under the policy relieved the insured of strict performance of those provisions intended for the protection of the insurer only if it recognized its liability and assumed charge of the matters relating to the claim", 89 Pa.Super. 286).

The cases to the contrary cited by defendant such as Marvel Heat Corp. v. Travelers Indem. Co., 1950, 325 Mass. 682, 92 N.E.2d 233, insofar as not factually distinguishable from the present, we regard as against the better and more preponderant authority.

Alternatively defendant insurer might argue that, in the absence of prior Louisiana decision as to the availability of the defense under the "no action" clause thus unsuccessfully raised by it herein, such conflict in the jurisprudence should at least enable it to escape penalties for the arbitrary non-payment to its insured of damages due under the contract. However, considering the circumstances of this particular case as a whole and that the initial arbitrary denial of liability by defendant insurer caused plaintiff policyholder to settle the claim by compromise, we regard as untenable the argument that the insurer should escape liability for penalties resulting from its own initial arbitrary denial of coverage, when subsequently to the mutual benefit of policyholder and insurer the policyholder by reasonable compromise and avoiding the expenses of litigation reduced the amount for which the insurer is ultimately held liable, when penalties upon a greater amount had the insured not so minimized the loss by settling in advance of final judgment would concededly have been assessable.

Under LSA–R.S. 22:658, arbitrary failure of the insurer to make timely payment after proof of loss "shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss * * * together with all reasonable attorney's fees for the prosecution and collection of such loss." In Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113, 55 A.L.R.2d 1014, on finding that non-payment of the policy benefits was arbitrary this Court awarded similar penalties, even though a majority of the Court of Appeal had sustained the insurer's defense as to the policyholder's entire claim and dismissed the latter's suit. We see no reason not to award such similar penalties in the present instance.

■ Plaintiff's petition demanded $730.50 as reasonable attorney's fees. In the absence of evidence in the record as to the value of such reasonable attorney's fees, cf., Melancon v. Texas Co., 230 La. 593, 89 So.2d 135 (syllabi 16, 17), or of a finding

by the trial court under the eye of which the services were performed as to the reasonable valuation thereof, cf., Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (syllabus 29) this appellate court will non-suit plaintiff's claim in this regard.[5]

For the reasons assigned, the judgment of the trial court is reversed and set aside and it is now ordered that there be judgment in favor of the plaintiff and against the defendant in the amount of $4,870, together with legal interest thereupon from date of judicial demand until paid; together with 12% penalties under LSA–R.S. 22:658 upon such amount. Plaintiff's claim under LSA–R.S. 22:658 for attorney's fees for the prosecution of the present case is non-suited. All costs to be paid by defendant.

Reversed and rendered.

SIMON, J., concurs in part and dissents to that part of decree invoking penalties.

HAWTHORNE, J., takes no part.

---

5. Perhaps in view of the paternalistic purpose of the employers' liability act, the jurisprudence apparently has permitted the award by an appellate court of attorney's fees as a penalty against an insurer for the arbitrary non-payment of workmen's compensation, even in the absence of evidence thereasto in the record or

See, e. g., Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719, affirming La.App., 71 So.2d 625; Cummings v. Albert, La.App., 1 Cir., 86 So.2d 727. This apparent exception, however, is not applicable to this suit by an insured against its insurance carrier for reimbursement of damages covered by the insurance policy.