MAYRONNE MUD & CHEMICAL COR-
PORATION, Libellant,

v.

T–W DRILLING COMPANY et al.,
Respondents.

OIL FIELD BARGES, Inc., Libellant,

v.

T–W DRILLING COMPANY et al.,
Respondents.

T–W DRILLING COMPANY et al.,
Plaintiffs,

v.

The TRAVELERS INDEMNITY COM-
PANY, Defendant.

Admiralty Nos. 2738, 2739,

Civ. A. No. 5835.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 8, 1958.

Phelps, Dunbar, Marks, Claverie & Sims, J. Barbee Winston, New Orleans, La., for libellants Mayronne Mud & Chemical Corp. and Oil Field Barges, Inc.

Milling, Saal, Saunders, Benson & Woodward, C. D. Marshall, David J. Conroy, New Orleans, La., for respondent and plaintiff, T-W Drilling Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Pat F. Bass, New Orleans, La., for defendant The Travelers Indem. Co.

J. SKELLY WRIGHT, District Judge.

The only issues presented by this litigation are whether the claim of Oil Field Barges, Inc. for damage to its barge, and the claim of the Mayronne Mud & Chemical Corporation for damage to its mud aboard the barge, caused by a blowout of an oil well being drilled by the T-W Drilling Company for Humble Oil Company, are covered under T-W's comprehensive liability policy with The Travelers Indemnity Company, and whether Travelers' refusal to pay such claims is arbitrary, capricious or without probable cause, subjecting the insurer to penalties and attorneys' fees. The claims of Mayronne and Oil Field Barges have been compromised, but the question remains as to whether the amounts payable to these parties are the responsibility of T-W or its liability insurer.

The well in question was being drilled offshore, near the mouth of the Mississippi River, from a floatable, submersible drilling barge. Humble, the owner for whom the well was being drilled,

agreed to supply T-W Drilling Company with the mud necessary for drilling operations. Humble contracted with Mayronne to supply this mud. Mayronne chartered a barge from the Oil Field Barges, Inc. to house the supply. The barge in suit, together with the supply of mud, was moved by Humble alongside the drilling barge. The supply of mud aboard the barge was inventoried from time to time by Mayronne, who replenished it when necessary and sent a bill therefor directly to Humble. There is evidence that mud from this barge was used in the drilling, by drilling contractors other than T-W, of one or more Humble wells in the area at the same time the well in suit was being drilled.

The drilling barge, in addition to its mud tanks, also had a limited capacity for mud stowage, sufficient to house a two-day supply. T-W's drilling crew, instead of stowing mud on the drilling barge, however, simply went aboard the mud barge, obtained sacks of mud and dumped these sacks directly into the mud tanks of the drilling barge. Although T-W was an independent contractor in charge of drilling the well, over-all supervision of the drilling operation was maintained by Humble, including mud mixing.[1]

The policy in suit excludes coverage of property "owned, occupied or used by or rented to the insured, or * * * property in the care, custody or control of the insured * * *." Travelers maintains that the mud barge and its cargo are covered by this exclusion whereas T-W urges otherwise.

 Since the policy was delivered in Louisiana and the loss occurred in that state, it is conceded by both parties that Louisiana law applies. Fortunately, the very recent decision of the Louisiana Supreme Court, Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L.

Ins. Co., 235 La. 289, 103 So.2d 449, is most helpful here. In Hooley, the Court held that the base of the Robert E. Lee statue in New Orleans was not under the "care, custody or control" of the contractor charged with removing the massive column and statue from the base. The base was damaged by an accident occurring during the removal operation, and recovery under the contractor's comprehensive liability policy was allowed in spite of the "care, custody or control" exclusion. In fact, the Court awarded statutory penalties against the insurer for arbitrary and capricious refusal to pay the loss. Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., supra, 103 So.2d at page 451; LSA–R.S. 22:658.

 The decision in Hooley is in accord with the uniform jurisprudence which holds that "damaged property or premises merely incidental or adjacent to the contracted object upon which work is being performed by the insured is not within the 'care, custody or control' of the insured for purposes of the exclusion clause in question, even though he might be permitted access thereto during the performance of his contract." Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., supra, 103 So.2d at page 450; Boswell v. Travelers Indem. Co., 38 N.J.Super. 599, 120 A.2d 250; Maryland Cas. Co. v. Hopper, Tex.Civ. App., 237 S.W.2d 411; Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 280 App. Div. 665, 116 N.Y.S.2d 876; A. T. Morris & Co. v. Lumber Mut. Cas. Ins. Co., 163 Misc. 715, 298 N.Y.S. 227; Cohen v. Keystone Mut. Cas. Co., 151 Pa.Super. 211, 30 A.2d 203. It is this jurisprudence, and particularly the holding in Hooley, which controls the case at bar.

Here the owner, Humble Oil Company, in compliance with its contractual obligation, had made available to the contractor a supply of mud to be used as

1. The contract between T-W and Humble provided in part:
"It shall also be understood that in the event (Humble) furnishes mud and mud conditioners, they shall have supervision over the use of these materials to the extent that it shall stipulate the maximum and minimum specifications of the mud in use."

needed in completing the contract. Since the work was over water, a barge to house the mud was furnished as well. In effect, the owner had furnished, and kept supplied, a floating warehouse from which the contractor could draw his mud. If the owner had furnished a similar warehouse on land adjacent to a land drilling operation, no one would seriously urge that such warehouse and its contents were under the "care, custody or control" of the contractor. The fact that the operation was over water does not change the principle involved nor require a different result. The question is simply one of dominion and control. In the circumstances in suit, Humble, not T-W, exercised dominion and control of the barge and its cargo. T-W merely had the right to go aboard the barge to obtain mud as needed for the drilling operation. This right did not place the barge and its contents under the "care, custody and control" of T-W and within the exclusionary language of the policy. Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., supra.

■ The defendant, Travelers Insurance Company, cites cases from other parts of the country,[2] some of which are easily distinguishable from the case at bar, while others, it must be owned, seem to support the position for exclusion of the risk here invoked. In fact, some of the defendant's cases appear closer in point of fact to the present case than Hooley. But the Hooley case, by a unanimous Louisiana Supreme Court, nevertheless is a more reliable indication of the attitude of that court on this subject. It is a more reliable forecast of what that court might do if presented with the facts in suit than defendant's cases. It is this estimate of the attitude of the Louisiana Supreme Court which must govern this Court. Linkenhoger v. Owens, 5 Cir., 181 F.2d 97, 99.

Travelers' reliance on the "occupied or used by" exclusion is likewise unavailing. T-W neither occupied the barge nor used the mud which was damaged in the blowout. As shown above, it had the right to go aboard the barge to obtain mud to use in the drilling operation. But, in the circumstances of this case, the right to go aboard the barge did not amount to an occupation thereof, and, unquestionably, the mud in suit was not used by T-W before it was damaged in the blowout. It had merely been stowed aboard the barge by Humble to be used by T-W if and when necessary.

■■ It is admitted that the interpretation herein placed on the words "occupied or used by" and "care, custody or control" is not free from doubt. In fact, in some respects it may be at variance with their dictionary definitions. But dictionary definitions do not reflect the legal gloss to which these words have been subjected. Nor do they relieve the insurer of the burden of proving noncoverage under the exclusions in the policy. Home Benefit Association v. Sargent, 142 U.S. 691, 12 S.Ct. 332, 35 L. Ed. 1160; Board of Commissioners of Port of New Orleans v. Norwich Union Fire Ins. Soc., D.C., 51 F.Supp. 245; Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863; 29 Am. Jur. Insurance § 1444; 46 C.J.S. Insurance § 1321f. The insurer must, at its peril, make the policy exclusions clear and unmistakable. Home Benefit Association v. Sargent, supra; Board of Commissioners of Port of New Orleans v. Norwich Union Fire Ins. Soc., supra; Maryland Casualty Co. of Baltimore, Md. v. Beckham, 163 Miss. 836, 143 So. 886; Massachusetts Protective Ass'n v. Ferguson, supra; Boswell v. Travelers Indemnity Company, 38 N.J.Super. 559, 120 A.2d 250; Innis v. McDonald, Ohio Com.Pl., 150 N.E.2d 441, affirmed Ohio App., 150 N.E.2d 447. Otherwise, as here, there is coverage.

2. International Derrick & Equipment Co. v. Buxbaum, 3 Cir., 240 F.2d 536; Great American Indem. Co. of New York v. Saltzman, 8 Cir., 213 F.2d 743, 746; Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 194 F.2d 173.

The insurer was bound to know the type of business in which T-W, its assured, was engaged. Drilling wells offshore is a highly integrated operation, participated in by various contractors who supply various types of personnel, matériel and equipment. If the insurer wanted to exclude from coverage the supplies and equipment furnished its assured by other contractors, it should have said so in the policy, so that now it would not be reduced to taking refuge in generalities.

The claim of T-W for penalties and attorneys' fees is denied. Otherwise the judgment will be in its favor and against its insurer with costs.