118 So.2d 700 (1960)
J. Hugh KNIGHT
v.
L. H. BOSSIER, INC. (Bituminous Casualty Corporation Third Party Defendant).
No. 4933.
Court of Appeal of Louisiana, First Circuit.
March 3, 1960.
*701 J. Vance Thompson, Alexandria, for appellant.
Kay & Kay, DeRidder, for plaintiff.
LeCompte, Hall & Coltharp, DeRidder, for third-party defendant.
Before ELLIS, LOTTINGER and TATE, Judges.
TATE, Judge.
The original plaintiff, Knight, sued to recover certain damages allegedly caused by the employees of the defendant ("Bossier"). Bossier seeks by third party petition to implead as third party defendant its insurer ("Bituminous") under a general contractor's liability policy of public liability insurance. The trial court sustained an exception of no cause of action filed by Bituminous and dismissed the third party demand; and defendant Bossier, as third party plaintiff, appeals.
The sole issue before us upon this appeal is whether the District Court correctly held, in dismissing Bossier's third party demand, that the allegations of the original plaintiff's petition affirmatively show that the damages sought from the defendant Bossier are outside of the coverage of the insurance policy issued to Bossier by the appellee Bituminous.
According to the allegations of the pleadings, this suit arises from the performance of a highway widening and resurfacing contract by the defendant Bossier, a construction firm. Allegedly without warning to the original plaintiff, Bossier's employees took and left down about 2½ miles of fence along the highway right of way. This fence was used by Knight, the original *702 plaintiff, to retain his cattle within his large pasture bordering on the highway. As a result of this action by Bossier's employees, Knight's cattle escaped.
Knight's petition demands: (a) A total of $750 damages for cattle permanently lost through the action of Bossier's employees, plus $100 for the expenses of searching for and recovering other cattle caused to stray by said action; (b) Damages of $500 to replace and repair the fence, which allegedly was relocated and reconstructed by Bossier's employees about two months later in an unsatisfactory and unworkmanlike manner. The respective claims for these two types of damages present different legal questions and will be discussed separately.

I.
The damages sought for the allegedly negligent and deficient fence construction by the defendant contractor's employees are clearly excluded from coverage by the policy issued by Bituminous.
The pleadings show that Bossier's obligation to relocate and replace the fence arose solely from its contract with the Department of Highways in connection with its contractual obligation to widen the highway. Tr. 10, 12. The policy issued by Bituminous to Bossier did not apply to the injury or destruction of "property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control." Exclusions clause, section (j)(3).
Loss arising from injury to or destruction of the fences was excluded by this clause from coverage under the insurance contract, since the damaged or negligently replaced fences were the actual subject of the insured's construction contract and were thus within his "care, custody or control" within the meaning of the above-noted exclusion clause. See Thomas W. Hooley & Sons v. Zurich General Accident & Liability Ins. Co., 235 La. 289, 103 So.2d 449, 67 A.L.R.2d 1078; Annotation, "Scope of clause excluding from contractor's or similar liability policy damage to property in care, custody, or control of insured," 62 A.L.R.2d 1242.
The trial court judgment must therefore be affirmed insofar as it dismissed the third party demand seeking to compel the insurer-appellee to defend the claim for fence damage and to pay any judgment in this regard for which the defendant Bossier may be cast to pay the original plaintiff, Knight.

II.
A different question is presented with regard to the damages arising from the alleged negligence of Bossier's employees in permitting Knight's cattle to escape from the pasture, which do not fall under any of the specific exclusion provisions of the policy.
Bossier contends that it is protected against such claims by the insuring clause of the policy in which the insurer, agreed (Coverage C):
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
The insurer-appellee's very able counsel contends, to the contrary, that the loss of the cattle was caused by the intentional removal of the fence by Bossier's employees, so that it cannot be said that such loss was "caused by accident" so as to be within the coverage of the policy. The trial court agreed with this contention in sustaining the appellee's exception of no cause of action.
It is pointed out that, as the petition of the original plaintiff specifically alleges in claiming liability on the part of Bossier's employees, the loss of the livestock was a natural, ordinary, and foreseeable consequence of the alleged negligent removal of the pasture fence. We are cited to Schonberg *703 v. New York Life Insurance Co., 235 La. 461, 104 So.2d 171, where it was held that the test of whether a loss is accidental "is whether the average man, under the existing facts and circumstances, would regard the loss so unforeseen, unexpected, and extraordinary that he would say it was an accident". 104 So.2d 177. It is then strongly urged that the loss of the livestock was not "unforeseen, unexpected, and extraordinary", so as to be a loss "caused by accident".
The Schonberg case involved a suit on a life insurance policy to recover under a double indemnity provision insuring against death effected through "accidental means". The insured's death therein resulted from shock in the course of surgery when he was injected with a substance to which he was allergic. The insurer contended that the loss could not be "accidental" because the means of it was intentionally administered; just as in the present instance the insurer contends that Knight's loss of his cattle cannot have been caused by "accident" because the contractor's employees intentionally took down the fence. However, the Supreme Court rejected the insurer's contentions and held that the loss must be regarded as sustained through accidental means because "unforeseen, unexpected, and extraordinary."
For, of course, in determining whether the result is so unforeseen and extraordinary as to be considered the result of an accident, it depends upon from whose standpoint it is viewed: the person who intentionally did the act which provided the result, or the person affected by the result of the act. In the present instance, it may have been perfectly foreseeable to the contractor's employees that, should they remove the pasture fence without notifying the cattle owner, the cattle enclosed thereby would escape and might be lost or destroyed. But insofar as the cattle owner was concerned, such action by the contractor's employeesthe cause of his losswas not foreseeable, and it was unexpected. We think, therefore, that from the standpoint of the cattle owner the cause of the loss of his cattle was unforeseen, unexpected, and extraordinary so as to be caused by "accident" within the meaning of the policy term.
That such is the correct construction to be accorded the policy term, as a common and ordinary meaning to be assigned to the description of a loss by "accident," may be seen by reference to the following definitions found in standard words: "An accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens." Black's Law Dictionary (4th Ed., 1957) page 31. (Italics ours.) "In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or, if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens.' 1 C.J.S. Accident p. 427. (Italics ours.) "The terms `accident' and `accidental', as used in insurance policies * * * must be interpreted in their ordinary and popular sense as * * * an event which takes place without the foresight or expectation of the person acted on or affected by the event," 45 C.J.S. Insurance § 753, p. 777. See also 29 Am.Jur. "Insurance" Section 931, pp. 706-707.
As the above cited Schonberg case noted, summarizing the well settled jurisprudence to this effect, in Louisiana the language in insurance policies should be construed in its plain, ordinary, and popular sense and, where ambiguous, should be construed most favorably to the insured and against the insurer which prepared the contract. Following these applicable rules of construction, the alleged loss to plaintiff was "caused by accident" within the meaning of the policy term since caused by an event unforeseeable *704 and unexpected by him, the cattle owner who sustained the loss.
It is conceded by both parties that there is no decision by a Louisiana court directly in point. However, in a closely analogous situation decided by the federal courts in Louisiana, which applied Louisiana law, it was held that a loss caused by an intentional battery through the use of an automobile (where the plaintiff's decedent was deliberately run over and murdered by the omnibus insured) was "caused by accident" within the meaning of an automobile liability policy's insuring clause similar to that with which we are presently concerned. Jernigan v. Allstate Insurance Co., 5 Cir., 1959, 269 F.2d 353. Therein, the U. S. Fifth Circuit Court of Appeals held, correctly in our opinion, that the correct test under Louisiana law to determine for purposes of a liability policy whether the loss was caused by accident is to view it, as do the majority of the states, from the standpoint of the person injured, rather than from that of the person committing the act which causes the loss. See also denial of rehearing therein, 272 F.2d 857.
The holdings of the cases cited by the insurer-appellee (Neale Construction Co. v. United States Fidelity & Guaranty Co., 10 Cir., 199 F.2d 591; United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754), insofar as pertinent herein, are not persuasive because applying the latter and narrower meaning of "accident", in contravention of the well established Louisiana rule that the construction of ambiguous language in insurance policies should be that which is most favorable to the insured.

III.
For the above and foregoing reasons, the judgment dismissing the third party plaintiff's demand is reversed insofar as concerning the original plaintiff's demand against the latter for damages arising from the allegedly negligent loosing of the plaintiff's cattle, and the case is in this respect remanded for further proceedings not inconsistent with the views herein expressed; and the judgment appealed from is affirmed insofar as it sustained the insurer-appellee's exception of no cause of action and dismissed the third party plaintiff's demand against it with regard to the claim by the original plaintiff for damages arising by reason of the negligent fence destruction and replacement. The costs of this appeal are to be paid by the appellee. All other costs are to await final disposition of these proceedings.
Reversed and remanded in part; affirmed in part.