STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-869


BALTAZAR ORTIZ

VERSUS

MEADWESTVACO CORPORATION, ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2009-0278
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Phyllis M. Keaty, Judges.


**AFFIRMED.**

Charles J. Foret
Jason R. Garrot
Briney Foret Corry, LLP
P. O. Drawer 51367
Lafayette, LA 70505-1367
Telephone: (337) 237-4070
COUNSEL FOR:
        Defendant/Appellee - JV Industrial Companies, Ltd

David Ramsey Lestage
Lestage & Andrews, LLC
113 North Washington
DeRidder, LA 70634
Telephone: (337) 460-7987
COUNSEL FOR:
        Defendants/Appellees - National Union Fire Ins. Company of Pittsburgh,
        PA and AIG Specialty Insurance Company

**Robert Irwin Siegel**
**Gieger, LaBorde & Laperouse**
**701 Poydras Street – Suite 4800**
**New Orleans, LA 70139-4800**
**Telephone:  (504) 561-0400**
**COUNSEL FOR:**
    **Defendant/Appellee - AIG Specialty Insurance Company**

**Glen E. Mercer**
**Kourtney Twenhafel**
**Sally, Hite, Mercer & Resor, LLC**
**365 Canal Street – Suite 1710**
**New Orleans, LA 70125**
**Telephone:  (504) 566-8800**
**COUNSEL FOR:**
    **Defendant/Appellee - Steadfast Insurance Company**

**Alistair M. Ward**
**Gieger, LaBorde & Laperouse**
**701 Poydras Street – Suite 4800**
**New Orleans, LA 70139-4800**
**Telephone:  (504) 561-0400**
**COUNSEL FOR:**
    **Defendants/Appellees - Chartis Specialty Insurance Company and AIG**
    **Specialty Insurance Company**

**Noel Edward Warren**
**Jackson & Campbell**
**1120 20th Street, N.W.**
**Washington, DC 20036**
**Telephone:  (202) 457-1600**
**COUNSEL FOR:**
    **Defendant/Appellee - National Union Fire Ins. Company of Pittsburgh,**
    **PA**

**David M. Bienvenu, Jr.**
**John Allain Viator**
**Lexi T. Holinga**
**Melissa Jade Shaffer**
**Bienvenu, Bonnecaze, Foco, Viator & Holinga, APLC**
**4210 Bluebonnet Boulevard**
**Baton Rouge, LA 70809**
**Telephone:  (225) 388-5600**
**COUNSEL FOR:**
    **Defendant/Appellant – MeadWestvaco Corporation**

Richard W. Bryan
Noel E. Warren
Jackson & Campbell
1120 20th St, NW, #300 South
Washington, DC 20036-3437
Telephone:  (202) 457-1600
COUNSEL FOR:
    Defendant/Appellee - National Union Fire Ins. Companyof Pittsburgh, PA

Alton C. Todd
312 Friendswood Drive
Friendswood, TX 77546
Telephone:  (281) 992-8633
COUNSEL FOR:
    Plaintiff/Appellee - Baltazar Ortiz

**THIBODEAUX, Chief Judge.**

Employees of JV Industrial Companies, Ltd. (JVI) filed suit against MeadWestvaco Corporation (MWV) for personal injuries arising from their alleged exposure to a high concentration of $H_2S$ gas and other dangerous chemicals while working in a MWV refinery.[1] After settling these personal injury claims, MWV filed third-party demands against JVI and its insurers, Steadfast Insurance Company (Steadfast) and AIG Specialty Insurance Company (ASIC),[2] seeking contractual indemnity and insurance coverage for the claims asserted against and settled by MWV. The parties then filed several motions for summary judgment.

The trial court granted summary judgment in favor of JVI, Steadfast, and ASIC, finding no contractual indemnity or insurance coverage, and dismissed MWV's claims against JVI and its insurers. In a supplemental judgment, the trial court granted MWV's motion for a new trial, but nevertheless still found MWV was not entitled to indemnity or to coverage under either insurance policy on various grounds and again dismissed, with prejudice, MWV's claims against JVI and its insurers.

Under our de novo review of the record, we find JVI, Steadfast, and ASIC are entitled to judgment as a matter of law on the issues of contractual

---

[1]The eight plaintiffs are Baltazar Ortiz, Shelton Doyle, Daniel Hendry, Shanna Navarre, James Scott, Brian Snyder, Stephen Snyder, and William Iles. These plaintiffs also named as defendants: (1) SW&B Construction Company, LLC and/or KBR Holdings, LLC and/or KBR, Inc., "the general contractor that installed the device on the stack that would lose its vacuum causing the emission of noxious H2S [sic] fumes"; and (2) Total Safety U.S., Inc., the company "contracted to monitor the chemical emissions coming from the stack[.]" Only five of these plaintiffs were Louisiana residents.

[2]ASIC was formerly known as Chartis Specialty Insurance Company, which was formerly known as American International Specialty Lines Insurance Company. For simplicity, we will refer to the company as ASIC throughout this opinion.

indemnity and insurance coverage. Accordingly, we affirm the judgment of the trial court.

## I.

## <u>ISSUES</u>

MWV raises the following issues for this court's review:

(1) Is summary judgment erroneous because the District Court committed legal error in narrowly interpreting and applying MWV's indemnification inconsistent with the clear intent of the parties and without any adjudication of MWV's fault for the indemnified and insured JVIC employee claims?

(2) Is summary judgment erroneous because the District Court found MWV's settlement with the JVIC plaintiffs was for MWV's own fault and barred coverage under the provision in the Steadfast policy that excludes coverage for injury resulting "solely from negligence of the additional insured"?

(3) Is summary judgment legally erroneous because the District Court ignored disputed facts on whether the insured claim constitutes "pollution" and by applying Texas insurance law, as opposed to Louisiana law, to the pollution exclusion contained in the Steadfast policy[?]

(4) Is summary judgment erroneous because the District Court's interpretation of "Insured" in the ASIC policy is contrary to law and ignores an ambiguity in the definition of "Insured" that is required to be construed against ASIC?

(5) Is summary judgment erroneous because Steadfast and ASIC waived their "conditional" defenses under Louisiana insurance law by denying MWV's status as an insured and by not submitting any evidence showing the required prejudice to enforce

coverage defenses based on notice, consent to settle and other conditions precedent?

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

MWV operates a tall oil refinery and chemical manufacturing facility in DeRidder, Louisiana, where pine tree oil is fractionated into fatty acids and rosins, which are used as feedstocks for specialty chemicals. As part of a multi-million dollar Refinery Expansion Project, JVI was selected to perform weld overlay work in some of the refinery columns. In August 2007, MWV and JVI entered into a Construction Agreement (agreement) for the welding work to be performed by JVI at the refinery. From January 1, 2008 to January 1, 2009, JVI was insured by Steadfast pursuant to a Commercial General Liability Coverage policy bearing Policy Number BOG 9299883-07, and by ASIC pursuant to a Contractor's Pollution Liability Policy bearing Policy Number CPO 9984907. Under both policies, JVI was the Named Insured.

On March 13, 2009, Baltazar Ortiz, a JVI employee, filed suit against MWV, among other defendants, alleging that on or about April 27, 2008, Mr. Ortiz was exposed to a high concentration of $H_2S$ gas and other dangerous chemicals during the course of JVI's work at the refinery. Seven other JVI employees, Shelton Doyle, Daniel Hendry, Shanna Navarre, James Scott, Brian Snyder, Stephen Snyder, and William Iles, filed similar suits against MWV and its insurers, likewise alleging exposure to a high concentration of $H_2S$ gas and other noxious and dangerous chemicals during the course of JVI's work at the refinery, on or about April 27, 2008, June 11, 2008, or June 22, 2008. These plaintiffs did not bring claims against JVI

or any of its insurers as JVI enjoys workers' compensation immunity. By July 6, 2012, MWV had settled all of the claims brought by the eight JVI employees.

On September 26, 2012, MWV then filed a third-party demand against JVI and Steadfast, seeking reimbursement and indemnity for the amounts MWV incurred in defending and settling the lawsuits, pursuant to Section 23 of the agreement, which provided, with emphasis added by this court:

> ***To the fullest extent permitted by law, the Contractor shall indemnify, reimburse and hold harmless the Owner*** and Owner's agents, officers, directors and employees ***from and against all claims***, damages, suits, liabilities, costs, charges, demands, losses and other expenses (including, but not limited to, attorney's fees) attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property, including the loss of use resulting therefrom, ***arising out of or resulting in whole or in part from: (a) Contractor's performance of or failure to perform Contractor's obligations under the Contract; (b) the inaccuracy of any representation or warranty of Contractor contained in the Contract; or (c) any negligent act or omission of the Contractor***, any Contractor's subcontractor or their respective employees, agents or other representatives or anyone else directly or indirectly employed by any of them or otherwise acting under any of their supervision or control, ***regardless of whether or not it is caused in part by a party indemnified hereunder.*** This obligation is in addition to any other right or obligation of indemnity to which the parties indemnified hereby may be entitled. ***<u>In the event a loss or claim arises out of or is caused by the joint or concurrent negligence of both Company/Owner and Contractor, each party shall be responsible for its proportionate share of liability as determined by a court of competent jurisdiction.</u>*** Notwithstanding any other term to the contrary herein, neither party shall have liability to the other nor to their parents, partners, subsidiaries, divisions and affiliates for any indirect or consequential damages including but not limited to down time, loss of capital, loss of product, loss of profit, or loss of use and such disclaimer shall be effective whether such claim is brought in contract, warranty, or tort, including negligence and strict liability or otherwise, except in the

event and to the extent such damage is caused by the willful misconduct or gross negligence of a party.

In the event and to the extent that a claim is made by an employee of Contractor against an indemnitee hereunder, the intent of this Section 23 regarding Contractor's negligent act or omission is that Contractor shall, and it hereby agrees to, indemnify Owner, and Owner's agents, officers, directors and employees to the same extent as if the claim were made by a non-employee of Contractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Contractor, in any indemnification claim hereunder, hereby expressly and without reservation waives any defense and immunity it may have under any applicable Workers' Compensation Laws or any other statute or judicial decision, disallowing or limiting such indemnification and consents to a cause of action for indemnity.

Then on November 26, 2013, MWV filed a third-party demand against ASIC, likewise seeking to recover, as an insured party, expenses MWV incurred defending the suits. In response, the third-party defendants denied that MWV was entitled to indemnity under the agreement for its own voluntarily-assumed liability. The insurers further raised defenses to coverage under the terms and exclusions of their policies.[3] JVI also filed cross-claims against its insurers, asserting, in the alternative, that it was entitled to insurance coverage for any liability it may owe to MWV.

The parties filed multiple motions for summary judgment on various issues associated with the insurance policies and the agreement.[4] On July 9, 2014,

---

[3]After filing its third-party demands, MWV sent "proof of loss" letters to Steadfast and ASIC and then amended its petition, seeking penalties and attorney's fees pursuant to La.R.S. 22:1973 and/or La.R.S. 22:1892 for Steadfast's and ASIC's alleged bad faith in failing to respond to MWV's "satisfactory proof of loss," which MWV alleged complied with all the requirements for notice due "under the terms of the insurance polic[ies] at issue."

[4]Steadfast sought summary judgment and dismissal of both MWV's and JVI's claims on several grounds, including the following: (1) pollution exclusion; (2) lack of bad faith; (3) insured contract provisions; (4) notice and consent to settle provisions; and (5) pre-tender costs, number

5

the trial court heard the pending motions and issued its judgment on November 19, 2014, granting the third-party defendants' motions for summary judgment on the issues of indemnification and whether the agreement was an "insured contract" under the insurance policies. In its written reasons, the trial court concluded that JVI did not owe MWV indemnity or reimbursement under the agreement. The trial court further found that the agreement was not an "insured contract" as that term was defined in the insurance policies because JVI did not contractually assume MWV's tort liability. All claims of MWV against JVI and its insurers were dismissed, with prejudice.

On December 1, 2014, MWV filed a motion for new trial, arguing that dismissal of all its claims was erroneous because the judgment adjudicated claims that were either not decided by the trial court or were not before the court on pending motions for summary judgment. Finding its November 19, 2014 judgment was overly broad in dismissing all of MWV's claims with prejudice, the trial court amended its ruling with a supplemental judgment, signed on March 29, 2018, in which the court granted: (1) MWV's motions for new trial and for partial summary judgment regarding its status as an additional insured under the Steadfast policy; (2) Steadfast's motions for summary judgment on its policy's (a) pollution exclusion and (b) notice and consent to settle provisions; and (3) ASIC's motion for summary judgment regarding MWV's breach of conditions precedent to coverage. The trial

_____

of occurrences, and limits of available insurance. ASIC sought summary judgment and dismissal of both MWV's and JVI's claims on several grounds, including the following: (1) exclusion of coverage for injuries sustained by employee of named insured; (2) contractual liability exclusion; (3) lack of bad faith; and (4) breach of conditions precedent. MWV sought partial summary judgment (1) on the ground that the insurers waived all conditional defenses by denying coverage, and (2) as to its status as an "additional insured' under the Steadfast policy. JVI sought summary judgment on the ground that it owed no indemnity obligation to MWV for MWV's own liability, but in the alternative, JVI also filed cross-motions for summary judgment against Steadfast and ASIC on the issues of coverage.

court also denied MWV's motion for partial summary judgment regarding the insurers' waiver of all conditional defenses, declared all other pending motions moot, and again dismissed, with prejudice, MWV's claims against JVI, Steadfast, and ASIC.

In its reasons for judgment, the trial court found that the indemnity section was still unenforceable as JVI did not assume MWV's tort liability pursuant to the language of the agreement and MWV was seeking coverage and indemnity for its own fault. Though JVI did breach the agreement by not adding MWV as a "Named Insured" under its Steadfast policy, the trial court reasoned that MWV suffered no harm because the Steadfast policy, issued and contracted in Texas pursuant to its insurance law, had a pollution exclusion enforceable under Texas law, which was applicable given that (1) Louisiana's interest evaporated after the five Louisiana plaintiffs were dismissed in the underlying suit, and (2) Texas's interest in regulating its insurance industry outweighed Louisiana's interest.

Regardless, the trial court found MWV did not comply with the Steadfast policy's notice provisions, which entitled Steadfast to notice of claims "immediately" and "as soon as practicable," or the policy's unambiguous no-payment-without-consent provision. Moreover, even though MWV was an additional insured under the Steadfast policy, the trial court reasoned that, because neither Steadfast nor JVI were involved in the underlying litigation or participated in the settlement with the plaintiffs, allowing MWV to seek indemnity after unilaterally choosing to settle would result in an absurd consequence.

The trial court also concluded that MWV was not an insured under the ASIC policy which, under its unambiguous language, only covered losses resulting from the liability of its insured, JVI, whereas MWV was seeking to recover for the

settlement of its own liability. Nevertheless, the trial court reasoned that, even if MWV was insured under the ASIC pollution policy, MWV's breach of said policy's conditions precedent, i.e., "immediate notice" and consent to settle, precluded any coverage.

Finally, the trial court found no merit in MWV's argument that the insurers waived their notice and consent to settle defenses by denying coverage based on policy exclusions, reasoning that MWV's own argument presupposes that the insurer denied coverage and then the insured settled. By the time MWV notified the insurers, however, both Steadfast and ASIC already had vested late notice and consent defenses and, therefore, did not waive their rights to assert these defenses by denying coverage based on their policies' exclusions. As there was no way to know what the insurers may have done in the underlying litigation, the trial court also found MWV's argument as to the lack of a showing of prejudice on the part of the insurers meritless. Because MWV made the intentional choice not to put JVI or its insurers on notice of the plaintiffs' claims until after settlement, the trial court concluded that, even if Louisiana law would require a showing of prejudice to enforce these conditions precedent with these sophisticated insureds, prejudice was established.

III.

**STANDARD OF REVIEW**

An appellate court reviews a motion for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. Therefore, just like the trial court, we are tasked with determining whether "the

motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

IV.

**LAW AND DISCUSSION**

The issues in this matter all revolve around the interpretation of the agreement between MWV and JVI as well as the insurance policies issued to JVI by Steadfast and ASIC, respectively. As contracts, our interpretation of these documents is governed, therefore, by the general rules of contractual construction.

According to these rules, our primary responsibility is to determine the parties' intent. La.Civ.Code art. 2045. We begin our analysis with the words of the contract, construing the words and phrases using their plain, ordinary, and "generally prevailing meaning," and ascribing technical terms with their "technical meaning." La.Civ.Code art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Accordingly, such contracts must be enforced as written.

> Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict

9

> construction to apply, the insurance policy must be not
> only susceptible to two or more interpretations, but each
> of the alternative interpretations must be reasonable.

*Sims v. Mulhearn Funeral Home*, *Inc.*, 07-54, p. 9 (La. 5/22/07), 956 So.2d 583, 589-90 (citations omitted).

Because the questions of interpretation and ambiguity at issue herein are legal in nature, they can be resolved on summary judgment. *Id.* Therefore, we turn now to an examination of the contractual provisions that we find are dispositive in this matter.

### *Indemnification*

The basis of the present litigation is the indemnification MWV alleges it is owed from JVI and its insurers pursuant to the indemnity provision contained in Section 23 of the agreement. Though our interpretation is governed by the general construction rules recited above, courts strictly construe contracts "whereby the indemnitee is indemnified against the consequences of his own negligence . . . , and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms." *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259 (La.1990). Like the trial court, we do not find that the indemnity section of the agreement here unequivocally states that JVI will indemnify or assume responsibility for injuries caused by MWV.

Admittedly, the first sentence does state that JVI "shall indemnify, reimburse and hold harmless" MWV "from and against all [tort] claims . . . arising out of or resulting in whole or in part from: (a) [JVI's] performance of or failure to perform [JVI] obligations under the Contract; (b) the inaccuracy of any

representation or warranty of [JVI] contained in the Contract; or (c) any negligent act or omission of [JVI] . . . , regardless of whether or not it is caused in part by [MWV]." By its explicit terms, the first sentence requires JVI to indemnify MWV for any claims arising from JVI's negligence, even if MWV is partially at fault.

The third sentence, however, then negates any previous assumption of liability in providing that "[i]n the event a loss or claim arises out of or is caused by the joint or concurrent negligence of both [MWV] and [JVI], each party shall be responsible for its proportionate share of liability as determined by a court of competent jurisdiction." Under these terms, MWV would only be entitled to indemnification for claims arising out of JVI's share of liability. While this third sentence directly contradicts the first, it must, nevertheless, still be read in conjunction therewith, thus creating an equivocation as to the parties' intent regarding the extent of the indemnity obligation assumed. Strictly reading the first sentence in conjunction with the third, we cannot, therefore, find that the parties expressed, in unequivocal terms, an intent for JVI to indemnify MWV for MWV's own negligent acts or voluntarily assumed liability.

In their petitions, the plaintiffs sought damages solely for MWV's negligence. MWV settled those claims and then sought indemnity from JVI for its settlement and defense costs of over three million dollars. But under our law of comparative fault, MWV could only be liable to the plaintiffs for damages caused by its own negligence as La.Civ.Code art. 2323(A) provides:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032,

11

or that the other person's identity is not known or reasonably ascertainable.

It follows, therefore, that when MWV settled with the plaintiffs, MWV only compensated the plaintiffs for damages resulting from MWV's own negligence. *Boykin v. PPG Indus., Inc.*, 08-117 (La.App. 3 Cir. 6/18/08), 987 So.2d 838.

Thus, we find that JVI was under no obligation to indemnify MWV for the plaintiffs' tort claims against MWV. As a strict construction of the indemnification provision does not support MWV's claims for reimbursement of the costs it incurred in the settlement and defense of the lawsuits brought against it, we find JVI is entitled to judgment as a matter of law on the issue of indemnification.

Unlike the trial court, however, we find no need to address whether our interpretation of the indemnity provision would likewise preclude recovery under the insured contract provisions of the insurance policies because, even assuming, without so holding, that MWV could be entitled to coverage under either policy, we find that its admitted breach of the conditions precedent therein is dispositive of the remaining issues of coverage.

***Conditions Precedent***

Both the Steadfast and ASIC policies imposed duties upon an insured in the event of an occurrence, offense, claim, or suit. They also provided that a breach of these duties could preclude coverage at the insured's cost.

The Steadfast policy mandated that an insured "must see to it that we[, Steadfast,] are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Moreover, if a claim was brought against "any insured," that insured had to "[i]mmediately record" the details and "[n]otify [Steadfast] as soon as practicable." The insured was also obligated to "see to it that [Steadfast] receive

12

written notice of the claim or 'suit' as soon as practicable[,]" as well as "[i]mmediately send" copies of any relevant documents and "[c]ooperate with [Steadfast] in the investigation or settlement of the claim or defense against the 'suit'." The policy further stated that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, . . . without [Steadfast's] consent."

"As a condition precedent to the right of coverage provided by" the ASIC policy, an insured had to "give [ASIC] immediate notice of receipt of the **Claim** by the **Insured**." The policy likewise mandated that the insured "cooperate with [ASIC] to the fullest extent possible" and forward relevant information to ASIC "as soon as practicable after receipt[.]" Under the policy, "[n]o **Insured** shall admit liability . . . or, except at such **Insured's** own cost, voluntarily make any payment, assume any obligation, or incur any expense without [ASIC's] prior written consent."

Pursuant to these provisions, any insured seeking coverage under either policy was required to provide the insurer with immediate notice of any claim against the insured and could not voluntarily make any payment on a claim without the insurer's prior written consent.

The undisputed facts herein establish that eight employees of JVI filed suit against MWV beginning in March 2009, alleging bodily injury sustained during their work at the MWV refinery in April and June of 2008. By May 2008, MWV had received the certificates of insurance evidencing JVI's policies with Steadfast and ASIC. Nevertheless, MWV, as an admitted tactical strategy, proceeded to litigate and settle all of the claims by July 2012, without providing any notice to JVI, Steadfast, or ASIC. Steadfast only learned of the claims against MWV when MWV

13

filed its third-party petition against JVI and Steadfast, on September 26, 2012, over three years after the filing of Mr. Ortiz's suit and two months after the settlement of all the plaintiffs' claims. ASIC did not learn of the claims until MWV filed its third-party demand against ASIC, on November 26, 2013, over four years after the filing of the first suit and over fourteen months after the settlements. Clearly, MWV did not comply with the conditions precedent recited above.

"Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery." *Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La.App. 4 Cir. 1992). In *Rosenthal v. Security Insurance Group of New Haven*, 205 So.2d 816 (La.App. 1 Cir. 1967), an insured voluntarily paid a claim after his insurer denied liability and then sought recovery from the insurer for the amount he paid to settle the claim. The *Rosenthal* court held, however, that the insured was precluded from asserting a claim against the insurer because he had breached the consent-to-settle language in the insurance policy. Rejecting the insured's argument that the consent-to-settle language was contrary to public policy, the court explained:

> It is obvious that the company is obligated to pay only those amounts which the insured is legally liable to pay. This liability must be determined either by a court or by the claimant, the company, and the insured jointly. There are no provisions of the policy under which the insured has any right to make any determination as to his own liability. His fear as to being the subject of a civil suit is groundless since the company is obligated to defend any suit filed against him, even though it be frivolous. We do not find that the defendant was dilatory in handling this claim or that, if it had been, such behavior would give plaintiff any ground for reimbursement if he independently made payment of a claim against him.

> We agree with defendants that this is an action under the policy, and that the terms of the policy must control. There being no ambiguity therein, and nothing

14

> contrary to public policy having been brought to our attention, we find that any payment made by the insured whose liability has not been judicially determined, without the consent of his insurer, is not subject to be reimbursed by the insurer.

*Id.* at 817-18.

In the present matter, MWV admittedly did not even provide notice of the plaintiffs' suits to the insurers until after it settled all the claims against it. Thus, there is no dispute that the settlement was made without the insurer's notice and certainly not with their consent in breach of the clear and explicit language of the insurance policies.

Nevertheless, MWV argues that the conditions precedent should not be enforced as unambiguously written because the insurers allegedly waived such defenses by denying coverage and neither insurer provided evidence of prejudice. We, like the trial court, find both of these arguments meritless.

Louisiana courts have declined to enforce consent-to-settle and no-action clauses in certain situations, such as when (1) the insurer "wrongfully refuses to defend its insured," *Arceneaux v. Amstar Corp.*, 10-2329, p. 20 (La. 7/1/11), 66 So.3d 438, 452; or (2) the insurer "denies coverage where there is coverage, or unjustifiably delays settlement, forcing the insured to settle separately." *Emile M. Babst Co., Inc. v. Nichols Constr. Corp.*, 488 So.2d 699, 703 (La.App. 1 Cir. 1986). But in all these situations, the insurer was given notice and then denied coverage *prior* to settlement, which then freed the insured to settle without the insurer's approval. The facts of this case, though, are somewhat unique in that MWV made the tactical decision to not notify either JVI or its insurers until *after* MWV settled all the claims brought against it.

15

In arguing that the insurers both waived any defenses arising from MWV's undisputed breach of the conditions precedent by denying coverage after the settlements, MWV relies upon *Thomas W. Hooley & Sons v. Zurich General Accident and Liability Insurance Company*, 235 La. 289, 103 So.2d 449 (1958). However, we find MWV's reliance on *Hooley* is misplaced.

In *Hooley*, 103 So.2d at 452-53, the supreme court held:

> Although most of the cases involved not only (as here) an unjustified denial of liability but also a specific refusal to defend an action brought against the insured, the reasoning therein as well as the equitable reasons therefor support the conclusion that by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the 'no action' clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. Especially when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement to its insured of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.

Decades later, the supreme court in *Arceneaux*, 66 So.3d at 452, limited its holding in *Hooley*, explaining:

> While *Hooley* did find a waiver of a policy provision by breach of the duty to defend, the provision was unrelated to coverage and related only to a preliminary matter dealing with the insurer's defense obligation. The narrow holding of *Hooley* cannot be extended to find waiver of other insurance contract provisions, particularly those related to coverage. *Hooley* simply stands for the proposition that where an insurer wrongfully refuses to defend its insured, the insured is free to settle the case against it without the insurer's approval.

Here, the trial court determined "it must fashion a remedy for redress of that breach which is commensurate with the breach of the duty to defend." However, that remedy, waiver of all policy defenses, is not supported by law. The result of the trial court's holding is judicial legislation, imposing a penalty on the insurer that is not provided for by the legislature and is in fact on top of penalties already provided by the legislature. The duty to defend is provided in the insurance contract; therefore, its breach is determined by ordinary contract law principles and the insurer is liable for the insured's reasonable defense costs. William Shelby McKenzie and H. Alston Johnson, III, *Louisiana Civil Law Treatise: Insurance Law and Practice*, Vol. 15, § 215, p. 614 (3rd Ed.2006). If the breach is found to be in bad faith, statutory penalties are imposed under La. R.S. 22:658 (now La. R.S. 22:1892). The remedy created by the lower courts in this case judicially imposes a result that would permit insureds to reap a windfall of potentially enormous profits, far beyond the natural consequences of the insurer's bad faith breach of the duty to defend, and far beyond the scope of the insurer's contractual undertaking.

As the trial court noted, the ruling in *Hooley* presupposes that the insurer was notified and then denied coverage prior to settlement. The insurers herein did not refuse to defend MWV, thereby forcing MWV to settle its claim without their approval. Rather, the insurers denied the claim while simultaneously asserting MWV's breach of the notice and consent conditions as a defense to coverage only after MWV had settled its claims without any notification to the insurers. No action was taken by the insurers that would warrant a waiver of their defenses arising from MWV's intentional breach of its obligations under the notice and consent provisions.

Regarding MWV's prejudice argument, we cite with approval the following reasoning adopted by the Fifth Circuit in *Danrik Construction Incorporated v. American Casualty Company of Reading Pennsylvania*, 314 Fed.Appx. 720, 724 (5th Cir. 2009) (quoting *Motiva Enters., LLC v. St. Paul Fire &*

*Marine Ins. Co.*, 445 F.3d 381, 386-87 (5th Cir. 2006)), in holding that an insurer suffered prejudice when its insured unilaterally settled a claim:

> Assuming without deciding that an insurer must show prejudice to avoid its obligations under the policy when the insured breaches the consent-to-settle provision, based on the summary judgment evidence in this case, we are satisfied that National Union suffered prejudice as a matter of law. An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement. When, as in this case, the insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer has no opportunity to participate in or consent to the ultimate settlement decision, we conclude that the insurer is prejudiced as a matter of law. Under these circumstances the breach of the consent-to-settle provision in the policy precludes this action.

In the present case, neither Steadfast nor ASIC was notified or consulted about the underlying claims brought against MWV prior to the settlement. None of JVI's insurers were consulted about the settlement, which was not tendered to either of them. And neither insurer was given an opportunity to participate in, much less consent to, the ultimate settlement decision. Therefore, even if a showing of prejudice would be required, we agree with the trial court that Steadfast and ASIC were prejudiced, as a matter of law, by MWV's failure to notify either insurer of the plaintiffs' claims against MWV until years after the underlying claims were filed and months after the settlements were effected.

Accordingly, although courts have excused breaches of conditions precedent in other situations, we find, under the undisputed facts herein, MWV's unilateral decision to settle the underlying claims without any notice to the insurers precludes its ability to recover from either Steadfast or ASIC. As all other assignments of error are rendered moot by this holding, we pretermit their discussion and affirm the trial court's judgment (1) granting summary judgment in favor of the

third-party defendants on the issues of indemnity and insurance coverage, and (2) dismissing, with prejudice, MWV's claims against JVI, Steadfast, and ASIC.

V.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Costs of this appeal are assessed to the Defendant/Third-Party Plaintiff/Appellant, MeadWestvaco.

**AFFIRMED.**