236 So.2d 674 (1970)
Kenneth N. BENOIT, Plaintiff-Appellant,
v.
AMERICAN MUTUAL INSURANCE COMPANY OF BOSTON, Defendant-Appellee.
No. 3088.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1970.
Rehearing Denied June 25, 1970.
*675 J. Minos Simon, and Robert Lecky, Lafayette, for plaintiff-appellant.
Watson, Blanche, Wilson, Posner & Thibaut, by David W. Robinson, Baton Rouge, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
FRUGE, Judge.
This suit was instituted by Mr. Kenneth N. Benoit, plaintiff-appellant, against the defendant insurer for payment of damages to his home and the contents thereof, as a result of a fire on January 14, 1969.
The trial court awarded the plaintiff $30,328.11 as the amount due under the policy of insurance issued by the defendant, but denied the plaintiff penalties and attorney fees provided by La.R.S. 22:658.
The only issue on appeal is whether or not the trial court erred in refusing to grant penalties and attorney fees to the appellant. It was stipulated between the parties that $3,500.00 would be reasonable attorney fees, in the event the attorney fees were granted.
There was evidence that the fire was of incendiary origin, and officials investigating the fire suspected arson. Two unopened plastic containers with traces of gasoline were found in the living-room closet, which was partially open.
Mr. Benoit was immediately suspected by the investigators. Their investigation showed, however, that Mr. Benoit was in Beeville, Texas, on a hunting trip at the time of the fire and had been there for several days preceding the fire. He had been cited by officials in Beeville, Texas, for a hunting violation, and there is little doubt that he was in that area at the time of the fire.
Upon returning to Lafayette shortly after the fire, Mr. Benoit was contacted by Mr. George Bernard, Jr., a Lafayette adjuster retained by the defendant to handle the claim. It appears that Mr. Bernard was not a regular employee of defendant, but was occasionally employed on an hourly basis to handle specific claims, which he did in the instant case.
*676 There was considerable emphasis placed on the negotiations between Mr. Benoit and Mr. Bernard by counsel for both parties. It appears that Mr. Benoit realized there were suspicious circumstances surrounding the fire, and he was not adamant about the claim. He and Mr. Bernard worked amicably together until Mr. Bernard was taken off the case on May 2, 1969.
One significant fact, however, is that Mr. Bernard secured an estimate of the damage to the structure on behalf of the defendant almost immediately after the fire. This estimate was obtained from M. L. Monies Lumber Company of Lafayette, which estimated the damages to the structure as being $20,287.61. However, there was no attempt to secure an estimate of the damages to the contents, nor was one provided in the form of a proof of loss by the plaintiff.
Plaintiff's counsel emphasizes that Mr. Benoit was only suspected for a short time after the fire occurred. Defendant's counsel emphasizes that during this period Mr. Benoit filed no proof of loss nor made a formal demand.
In a letter on January 22, 1969, to his superiors in Wakefield, Massachusetts, Mr. Bernard wrote: "We last spoke with the fire marshal Tuesday, January 21, 1969, and he has indicated that he will continue his investigation throughout this week. The insured himself had been away from the city for five days prior to the fire on a quail hunt in Beeville, Texas, a distance of 500 miles from Lafayette, Louisiana. He is no longer under suspicion by the fire marshal. However, the insured himself being a bachelor, there is a possibility he may have had enemies and this is what the fire marshal is checking out." (Volume 2, page 76-b, Exhibit P-5.)
Plaintiff contends that this reflects that the plaintiff was no longer under suspicion, and any delay in payment on the basis of suspected arson after that date was arbitrary and capricious.
Again, on March 3, 1969, in a letter to his superiors in Wakefield, Massachusetts, Mr. Bernard wrote: "The fire marshal is not suspicious of the insured, but since he is a bachelor and that it is a known fact that he gets around the area, the Fire Marshal are (sic) of the opinion that someone was jealous of the insured and deliberately set fire to the house * * *" (Volume 2, page 78, Exhibit P-6.)
Another letter from Mr. Bernard to his superiors in Wakefield, Massachusetts, dated April 17, 1969, indicated, however, that the fire marshal had informed him there were two suspects in the case, and that the fire marshal was still satisfied that it was a case of arson. The fire marshal indicated that one of the suspects was the insured's maid, and the other was a friend of the insured who had been involved in two arson claims in the past six years. Officials of the State Fire Marshal's office did attempt to keep Mr. Bernard apprised of the progress of the investigation, but their reports were of little value to Mr. Bernard. These communications to Mr. Bernard did not indicate that there was any evidence against Mr. Benoit, but they also indicated that as of April 17, 1969, the fire marshals were still conducting a vigorous investigation of the case.
On May 9, 1969, Deputy Fire Marshal John Allen Breaux filed a report containing the following conclusion: "I conclude that this was attempted arson by a person or persons unknown, and that at the present time there is insufficient evidence to indicate a suspect or no information or evidence could be acquired to warrant continuance of this investigation. I recommend this case be closed. Case closed May 9, 1969." Mr. Breaux wrote "investigation closed" in the blank provided for "disposition of case" on the form he was using.
As of May 9, 1969, the investigation was closed because there was insufficient evidence to warrant continuance of the investigation. Mr. Robinson, who was handling the case for the defendant, had requested the State Fire Marshal's office by letter of May 8, 1969, to inform him when *677 the investigation was completed and to give him a copy of the final report.
Meanwhile, the plaintiff had learned that Mr. Bernard had been taken off the case and that it had been turned over to defendant's attorney. Plaintiff then retained an attorney, who filed suit on May 8, 1969. On May 27th defendant filed an answer denying liability, relying on the defense of arson. On June 26, 1969, defense counsel received a copy of the final report from the State Fire Marshal's office.
The testimony of John Allen Breaux and the letters by Mr. Bernard indicate that within three weeks after the fire, Mr. Benoit himself was no longer suspected of having started the fire, but there was still reasonable grounds for not paying the claim because of the possibility that Mr. Benoit had procured someone else to burn the house.
As of June 26th, however, after receiving the final report from the State Fire Marshal's office, the defendant knew that there was no evidence at all to indicate that the plaintiff had burned the house or procured its burning, and that the defense of arson was simply not available. Also, as of that time, the defendant knew by virtue of an estimate obtained by its own adjuster that the damage to the structure was at least $20,287.61 yet the defendant did not tender payment for the loss of the structure until October 1, 1969.
The defendant still did not know the extent of the damages to the contents of the house, and the plaintiff had not given an estimate or proof of loss concerning those items. The defendant was justified in refusing to tender payment for those items until an estimate could be obtained.
The purpose of the proofs of loss and demand provisions of La.R.S. 22:658 in regard to penalties and attorney fees, is to fully apprise the insured of the nature and amount of the claim. In the instant case, the insurer was only apprised of the amount of the claim. In the instant case, the insurer was only apprised of the amount of the damage to the structure and not to the contents. Also, the insured had made no formal demand for payment. However, after denying liability in its answer, the defendant waived the requirement of a proof of loss or demand in regard to the structure, for either would have been a vain and useless act. See Riddle v. Allstate Insurance Company, 203 So.2d 820 (La.App. 4th Cir. 1967).
Since the defendant had made its own estimate of the damage to the structure, it should at least have tendered $20,287.61, the amount of the estimate, to the plaintiff within sixty days of June 26, 1969. After that date there was no excuse for defendant's failure to do so, for it had learned conclusively on that date that the defense of arson was no longer available. Its failure to do so before October 1, 1969, was arbitrary and capricious, and penalties and attorney fees must be assessed as to the amount due for the loss of the structure.
Since the parties stipulated that $3,500.00 would be a reasonable assessment for attorney fees in the event the defendant was found arbitrary and capricious, we will abide by that stipulation and award the plaintiff attorney fees of that amount. La.R.S. 22:658 provides a penalty of 25% of the amount that is arbitrarily and capriciously withheld. In this case, the amount of $20,287.61 was arbitrarily and capriciously withheld after June 26, 1969. Plaintiff is therefore entitled to $5,071.90 in penalties.
Therefore, for the reasons assigned, the judgment of the trial court is amended to award the plaintiff penalties and attorney fees of $8,571.90. All costs of this appeal are assessed against the defendant-appellee.
Amended and affirmed.

*678 ON APPLICATION FOR REHEARING
En Banc. Rehearing denied.
PER CURIAM.
In its application for rehearing the defendant correctly states that we erred in fixing the penalty provided by LSA-R.S. 22:658 at 25% rather than 12%. See Roberts v. Houston Fire & Casualty Company, 168 So.2d 457 (La.App.3d Cir. 1964); Welch v. New York Underwriters Insurance Company, 145 So.2d 376 (La.App.3d Cir. 1962). Accordingly, we amend our original decision by fixing the statutory penalty assessed against the defendant at 12% rather than 25%. Subject to this amendment, the application for rehearing is denied.
Application for rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.