556 So.2d 267 (1990)
James Roy MONTGOMERY, Sr., Appellant,
v.
Wellborn JACK, Jr., et al., Appellees.
No. 21102-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Rehearing Denied February 22, 1990.
Writ Denied April 20, 1990.
*268 James Roy Montgomery, Sr., in pro per.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for appellee.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff, Montgomery, appealed from the judgment of the trial court in favor of defendant, Wellborn Jack, Jr., finding that plaintiff's action for damages alleging legal malpractice had prescribed. For the reasons stated herein, the judgment of the trial court is affirmed.
Issue Presented
The sole issue before this court on appeal is whether plaintiff's legal malpractice action alleging defendant's failure to prepare a writ application is grounded in tort or in contract, for the purpose of determining the applicable prescriptive period.
Factual Context
According to the record, plaintiff, James Roy Montgomery, Sr., is an inmate at the Louisiana State Penitentiary at Angola after being convicted of second degree murder and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. At the murder trial, plaintiff was represented by Frank Harlow. Harlow appealed plaintiff's conviction and after the appeal was instituted, Wellborn Jack, Jr. was employed by plaintiff to handle the matter before the Louisiana Supreme Court. In the spring of 1983, Jack briefed the case and argued it before the Louisiana Supreme Court. The Louisiana Supreme Court affirmed plaintiff's conviction and his application for rehearing was denied.
During his preparation of plaintiff's appeal, Jack concluded that under the legal standards prevailing at the time, plaintiff had received ineffective assistance of counsel at the trial. This opinion was expressed to plaintiff and the parties agreed to pursue post-conviction remedies based primarily on ineffective assistance of counsel. Jack based his opinion on ineffective assistance of counsel upon Harlow's failure to present a sufficient self-defense defense. At the same time, Jack was representing the death penalty case of Alvin Moore which was also based on ineffective assistance of counsel. In 1983 there was liberal caselaw on ineffective assistance of counsel and Jack reasoned that he could get good results for plaintiff under this line of jurisprudence. However, the case relied upon by Jack was later reversed by the U.S. Supreme Court in May, 1984.
On August 18, 1983, Jack wrote plaintiff confirming their conversation in which it was agreed that Jack would pursue writs of habeas corpus on plaintiff's behalf in state and federal court seeking to overturn plaintiff's second degree murder conviction and obtain a new trial. Jack stated his fee would be $10,000 or $125 an hour, whichever was greater. Jack stated he would commence work when he received the sum of $7000 cash and a signed copy of the letter indicating plaintiff's agreement to pay the balance of the fee and to reimburse expenses at the rate of $250 a month. Jack apparently enclosed with the letter a copy of a rough timetable showing the traditional sequence in which post-conviction remedies were pursued and stated it was his intention to pursue those remedies in that sequence in plaintiff's case. In pursuit of these remedies, Jack warranted that he would represent plaintiff in a professional and workmanlike manner. Jack stated it was his hope he would be able to obtain plaintiff a new trial but that he could not promise to achieve any specific result. Plaintiff signed the agreement on August 31, 1983.
It appears that during his representation of plaintiff, Jack and plaintiff discussed filing a writ application. On January 30, *269 1986, Jack wrote plaintiff that he would file a writ by February 7, 1986, and advised him not to file one on his own behalf. On August 29, 1986, Jack again wrote plaintiff stating that he would proceed as quickly as possible to finish up and put in plaintiff's hands a habeas petition sometime in the next week. On October 8, 1986, Jack wrote plaintiff that he was preparing on plaintiff's behalf "the writ of the century". It appears from the record that Jack never prepared a writ for plaintiff and plaintiff eventually filed his own writ application on January 13, 1987. On February 25, 1987, Jack terminated his representation of plaintiff and refunded a portion of his fee.
On March 30, 1988, plaintiff filed this action for damages naming as defendants, Wellborn Jack, Jr. and his liability insurer. In his petition plaintiff alleged that on or about August 11, 1983, defendant came to Angola in order to confirm legal representation of plaintiff. Plaintiff further alleged he was informed by defendant on August 29, 1986 and October 8, 1986 that he was preparing a writ on plaintiff's behalf. However, defendant never prepared any kind of legal document for post-conviction relief after leading plaintiff to believe that he was doing so. Plaintiff alleged that defendant was negligent and had failed to act with the required degree of care.
On July 29, 1988, defendant filed a peremptory exception of prescription contending the alleged negligent conduct had occurred more than one year prior to the filing of the action. Accordingly, plaintiff's claim against defendant had prescribed.
At the hearing on the exception, plaintiff primarily asserted that he and defendant had entered into a contract for defendant to prepare on plaintiff's behalf an application for writ of habeas corpus and that defendant led him, through his correspondence, to believe that such a writ was being prepared. Plaintiff argued that defendant made an express warranty of result when he stated he was preparing "the writ of the century" and therefore a 10 year prescriptive period for contractual actions was applicable rather than the one year prescriptive period for tort actions.
Defendant testified that he did enter into a contract of employment to provide legal services to plaintiff. Defendant stated he had hoped to prove ineffective assistance of counsel at plaintiff's trial based upon the more liberal caselaw before it was reversed by the U.S. Supreme Court. Jack testified that the practical effect of this reversal was absolutely devastating to plaintiff's potential writ application and ultimately resulted in the execution of Alvin Moore. Defendant stated that the reversal of the case resulted in a greatly heightened burden of proof and that his strategy necessarily changed with respect to plaintiff's case as he did not believe they could meet this burden. Defendant stated he was trying to research another method of achieving results while he was awaiting the outcome in the Alvin Moore case. Defendant testified he did not file a writ because he knew he did not have a winning theory and felt it would ultimately do plaintiff more harm than good.
Defendant stated that he warned plaintiff not to file a writ on his own behalf because there was only one "bite at the apple" and it would have been premature at that time considering the fluctuating state of the law. Jack learned plaintiff had filed his own writ application in January, 1987, and promptly terminated his representation. Jack testified that during the course of his representation, he conducted an extensive investigation into plaintiff's possible defense of ineffectiveness of counsel and had interviewed numerous witnesses.
Jack testified that in his opinion the law of ineffectiveness of assistance of counsel would have not been settled until final writs in Alvin Moore's case. That law did not become settled until after plaintiff filed his own writ application. Jack testified he was not able to get an understanding with plaintiff that they would not file anything until the Alvin Moore case was finally decided. Jack was awaiting the final decision in the Alvin Moore case as he testified there was reason to expect more favorable *270 attention to a death penalty case than to a non-death penalty case and the outcome of the Moore case was essentially going to determine the outcome of plaintiff's case.
Plaintiff testified that he did not file suit until March 30, 1988, as he did not have any knowledge that he could institute a civil action for malpractice. Plaintiff stipulated at the hearing that defendant did not make any representation or warranty of a specific result in his case.
Following the hearing, the trial court sustained defendant's exception of prescription. The trial court stated it was clear from the evidence that defendant made no warranty of any specific result to plaintiff nor did defendant do anything which would have created a 10 year contractual period of time within which this action should have been brought. Therefore, the court found that the one year prescriptive period was applicable. The court further found there was absolutely no question as to the time of discovery of the attorney's actions or inactions complained of as nothing was concealed or hidden from plaintiff. Based upon his knowledge of all the facts, plaintiff prepared and filed his own writ application and more than one year passed before plaintiff filed this suit for damages. The court found that plaintiff was not misled by any actions of defendant and there were no other circumstances which would have interrupted or suspended the one year prescriptive period. Further, the critical element that the one year prescriptive period did not begin until the attorney-client relationship was terminated was clearly met in this case. Defendant withdrew as counsel for plaintiff on February 25, 1987, terminating the attorney-client relationship and this suit was not filed until March 30, 1988, after the one year prescriptive period had expired.
Applicable Legal Principles
An action for legal malpractice normally states a cause of action in tort and is subject to the one year prescriptive period set forth in La.C.C. Art. 3492 (formerly La.C.C. Art. 3536). It is only where the attorney expressly warrants a specific result and fails to obtain that result, guarantees or warrants the ultimate effect of his work product or agrees to perform certain work and does nothing whatsoever that the cause of action is in contract and subject to the 10 year prescriptive period set forth in La.C.C. Art. 3499 (formerly La.C.C. Art. 3544). Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983).
In the usual case, the attorney contracts with the client to render that client the professional expertise and that degree of care, skill and diligence which is exercised by prudent practicing attorneys. Although the attorney is not required to exercise perfect judgment in every instance, if the attorney's judgment falls below the required standard of care, his resulting liability is for the breach of a legal, rather than a contractual, duty. Cherokee Restaurant, Inc. v. Pierson, supra.
Although there was some conflict in the jurisprudence as to whether a suit for legal malpractice stated a cause of action in tort or in contract or both, the general rule enunciated in Cherokee Restaurant, Inc. v. Pierson, supra, has been consistently followed by the courts in determining the applicable prescriptive period. See Law v. Mayeux, 527 So.2d 37 (La.App. 3d Cir. 1988); Olivier v. National Union Fire Insurance Company, 499 So.2d 1330 (La. App. 3d Cir.1986); Crawford v. Gray and Associates, 493 So.2d 734 (La.App. 2d Cir. 1986), writ denied, 497 So.2d 1012 (La.1986) and 497 So.2d 1013 (La.1986); Varnado v. Insurance Corporation of America, 484 So.2d 813 (La.App. 1st Cir.1986), writ denied, 489 So.2d 248 (La.1986), and Rayne State Bank & Trust v. National Union Fire Insurance Company, 469 So.2d 409 (La.App. 3d Cir. 1985), writ granted, 475 So.2d 346 (La.1985), modified on appeal, 483 So.2d 987 (La.1986).
As found by this court in Gifford v. New England Reinsurance Corporation, 488 So.2d 736 (La.App. 2d Cir.1986), the current rule applicable to actions for legal malpractice was developed by analogy to the rule applicable to actions for medical malpractice enunciated in Sciacca v. Polizzi, 403 *271 So.2d 728 (La.1981), which held that when a patient is injured by the negligence of his physician his action is in tort unless the physician has contracted for a specific cure or result. As noted in Sciacca v. Polizzi, supra, there is a legal duty upon and an implied agreement by the physician to treat the patient properly. A breach of this duty constitutes a tort and a medical malpractice action is tortious in nature whether the duty grows out of a contractual relation or has no origin in contract at all.
Likewise, an attorney is obligated to exercise at least that degree of care, skill and diligence which is exercised by prudent practicing attorneys in his locality. Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972). Thus, a breach of that duty would give rise to an action in tort, governed by the one year prescriptive period, even though there is a contractual relationship between the attorney and the client which includes implied obligations to properly perform certain services.
The jurisprudence has held that prescription in a legal malpractice action is suspended until the termination of attorney-client relationship. Edward J. Milligan, Jr., Limited v. LaCaze, 509 So.2d 726 (La.App. 3d Cir.1987), writ denied, 512 So.2d 440 (La. 1987) and Olivier v. National Union Fire Insurance Company, supra.
Prescription of Legal Malpractice Action
On appeal, plaintiff asserts that while defendant never promised to obtain plaintiff a new trial, he did guarantee to plaintiff he would prepare a writ for post-conviction relief. Thus, plaintiff argues that defendant made an express warranty of result when he agreed to prepare a writ application on plaintiff's behalf.
Defendant argues that no express warranty was made by him to plaintiff and that the evidence amply demonstrated the extensive work performed by defendant for plaintiff's application for post-conviction relief. Defendant testified numerous witnesses were interviewed in preparation of the post-conviction relief process. Therefore, defendant did not simply agree to write a writ application and then do nothing whatsoever. On this basis, defendant argues the trial court properly found the prescriptive period of one year was applicable to this case and correctly sustained defendant's peremptory exception of prescription. We agree.
The record reflects that after agreeing to represent plaintiff in the pursuit of post-conviction relief, defendant launched an extensive investigation into plaintiff's claim of ineffective assistance of counsel. Defendant contacted and interviewed numerous witnesses and generally investigated the manner in which plaintiff's defense was handled at trial. He also appears to have researched the law relative to the plaintiff's claim of ineffective assistance of counsel and stayed abreast of the developments in this area so as to file a writ on plaintiff's behalf at the most opportune time. Defendant stated he had good cause in delaying plaintiff's writ application while awaiting the ultimate outcome in the Alvin Moore case as he reasoned the Moore case would get more favorable results due to the death penalty and that plaintiff would have the advantage of these favorable results. Considering these efforts, it cannot be said that defendant did nothing whatsoever after agreeing to prepare a writ application.
Plaintiff essentially argues he contracted for a finished document and as he never received that written document, defendant must have done nothing in his representation of plaintiff. However, when an attorney undertakes the obligation to prepare a written document, it is implied that he will conduct the necessary investigation and research so as to prepare an appropriate and effective document. Thus, the investigation and research preparatory to drafting the promised document is an essential step to fulfilling that obligation and once the attorney has begun those preliminary steps, it cannot be said that he has done nothing towards the document's preparation.
*272 Likewise, it is clear from the evidence that defendant made no express warranty of result to plaintiff in his representation. Although plaintiff argues that defendant's promise to write the "writ of the century" constituted a warranty of express result, that argument is not persuasive. The mere promise to prepare a legal document such as a writ application cannot be equated to a guarantee that a favorable result will be obtained by such document.
Thus, under the jurisprudence noted above, we find that defendant made no express warranty of result nor agreed to perform certain work and then did nothing whatsoever. Therefore, plaintiff's action for the failure of defendant to prepare a writ application is grounded in tort and not in contract. Thus, the trial court correctly found that the one year prescriptive period was applicable.
It is now necessary to examine the record to determine whether the running of this prescriptive period was suspended. After reviewing the evidence, we find that the trial court was correct in holding that nothing was concealed or hidden from plaintiff nor was plaintiff misled by any actions of defendant. Plaintiff was aware that defendant had not prepared a writ application and filed his own writ application on January 13, 1987. On February 25, 1987, defendant withdrew as counsel for plaintiff and the attorney-client relationship was terminated. Plaintiff wrote defendant a letter on March 13, 1987 acknowledging his receipt of Jack's letter terminating the attorney-client relationship. This suit was not filed until March 30, 1988 after the one year prescriptive period had expired. Therefore the trial court properly sustained defendant's peremptory exception of prescription.
Conclusion
For these reasons, the judgment of the trial court against plaintiff, James Roy Montgomery, Sr., sustaining the peremptory exception of prescription filed by defendant, Wellborn Jack, Jr., is AFFIRMED. Costs of this appeal are assessed to plaintiff.

ON APPLICATION FOR REHEARING
Before MARVIN, FRED W. JONES, Jr., SEXTON, NORRIS and HIGHTOWER, JJ.
Rehearing denied.