579 So.2d 1182 (1991)
Ross LEE, Jr. and Minnie Ola Price Lee, Plaintiffs-Appellees,
v.
NEW ENGLAND INSURANCE COMPANY, Defendant-Appellant.
No. 22357-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1183 Rountree, Cox, Guin & Blackman by Gordon E. Rountree, Linda Blackman, Shreveport, for defendant-appellant.
Patricia N. Miramon, Shreveport, for plaintiffs-appellees.
Before SEXTON, VICTORY and STEWART, JJ.
STEWART, Judge.
Defendant, New England Insurance Company, appeals from an adverse judgment in the amount of $1850 awarded to plaintiffs, Ross Lee, Jr. and Minnie Ola Price Lee, as the result of a malpractice claim. We affirm.

FACTS
Ross Lee, Jr. and Minnie Ola Price Lee, employed the services of B.J. Woods, an attorney, in the spring of 1985 to handle the succession of Bashie Graham, Mrs. Lee's great aunt. The Lees paid Mr. Woods the amount of $1350 initially and $500 in installments and provided Mr. Woods with all requested documents. Mr. Lee contacted Mr. Woods on a weekly or a biweekly basis after he was retained and would be informed each time to call back in another week. The last purported contact between B.J. Woods and the plaintiffs came in June 1986 when documents relating to the succession were reviewed with Minnie Lee. Plaintiffs then were unable to see or talk to B.J. Woods who closed his law practice and moved to Dallas, Texas in September 1986.
The Lees never received any formal notice that B.J. Woods was closing his law practice departing Louisiana and moving to Texas. No documents or other information were received regarding the succession of Bashie Graham and in November 1986, the Lees observed the local news showing that B.J. Woods was being criminally prosecuted for taking client funds. In late 1986, the Lees retained counsel and filed suit against New England Insurance Company, the professional liability insurer for B.J. Woods, and requested reimbursement for sums paid to Mr. Woods for the succession *1184 proceeding as well as related costs and expenses. Defendant filed an exception of prescription. The trial court denied the exception finding ten-year prescription applicable to this case and the case proceeded to trial. The court rendered judgment in favor of plaintiffs for $1850 and this appeal followed.
New England Insurance Company, appellant, alleges that the trial court was in error in finding that this legal malpractice claim was governed by the ten-year prescriptive period because the duty of an attorney to a client is legal rather than contractual and a breach of that duty gives rise to a claim in tort, which is governed by prescription of one year.
Appellant further argues that this one-year prescriptive period commences to run when plaintiff becomes aware of the alleged negligent act or omission and of the fact that he would sustain damage or loss because of it. Appellant argues that because Minnie Ola Price Lee knew as early as August 1986 that Mr. Woods was not going to do what he had told her he would do, she had knowledge before one year prior to the date of suit that B.J. Woods was not going to perform the promised work. Therefore the prescriptive period has run.
Appellant next asserts that the exclusion in the insurance policy dealing with dishonest, fraudulent, or malicious acts serves to exclude the present claims against B.J. Woods. Finally appellant argues that the trial court failed to apply the $2500 deductible as set forth in the declarations page of the policy.
The Lees assert that the present action is subject to ten years prescription because B.J. Woods failed to perform any services at all and therefore breached his contract to provide services to them.
Alternatively, plaintiffs suggest that even if the court finds that one-year prescription applies, the case has not prescribed because Mr. and Mrs. Lee did not know for certain until the summer of 1987 that Mr. Woods was definitely going to be unable to complete the succession. As suit was filed in January 1988, it was well within the one-year prescriptive period.
In support of the trial judge's conclusion finding the exclusion inapplicable, plaintiffs assert that the actions of Mr. Woods did not demonstrate the requisite finding of intent. Plaintiffs agree with the trial court's finding that Mr. Woods was struggling to keep his practice and personal life afloat and, therefore did not intend to cause harm to the plaintiffs. Finally, the Lees argue that New England Insurance Company is not entitled to plead the deductible as an affirmative defense because it was not included in the original answer. Because appellant did not take advantage of the deductible, the request to do so is untimely.

DISCUSSION
An action for legal malpractice normally states a cause of action in tort and is subject to the one-year prescriptive period provided by LSA-C.C. Art. 3492. It is only where the attorney expressly warrants a specific result and fails to obtain that result, or agrees to perform certain work and does nothing whatsoever that the cause of action is in contract and subject to the ten-year prescriptive period provided by LSA-C.C. Art. 3499. Norwood v. Fish, 537 So.2d 783 (La.App. 2d Cir.1989), writ denied, 539 So.2d 634 (La.1989); Gifford v. New England Reinsurance Corporation, 488 So.2d 736 (La.App. 2d Cir.1986); Cherokee Restaurant Incorporated v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983); Knighten v. Knighten, 447 So.2d 534 (La. App. 2d Cir.1984), writ denied, 448 So.2d 1303 (La.1984); Rayne State Bank and Trust Company v. National Union Fire Insurance Company, 469 So.2d 409 (La. App. 3d Cir.1985), writ granted, 475 So.2d 346 (La.1985), reversed in part on other grounds; Rayne State Bank and Trust Company v. National Union Fire Insurance Company, 483 So.2d 987 (La.1986); and Elzy v. ABC Insurance Company, 472 So.2d 205 (La.App. 4th Cir.1985), writ denied, 475 So.2d 361 (La.1985). The prescriptive period commences when plaintiff becomes aware of the alleged negligent act or omissions of the attorney, and of the *1185 fact that he would sustain damage or loss by reasons thereof. Gifford v. New England Reinsurance Corporation, supra. However, prescription is suspended in a malpractice action as long as the attorney-client relationship is maintained. Newsom v. Boothe, 524 So.2d 923 (La.App. 2d Cir. 1988), writ denied, 531 So.2d 479 (La.1988); Blanchard v. Reeves, 469 So.2d 1165 (La. App. 5th Cir.1985), writ denied, 476 So.2d 347 (La.1985).
After reviewing the facts of this case, we agree with the trial court's application of the ten-year prescriptive period. The evidence reveals that the Lees paid B.J. Woods $1350 in cash on September 4, 1985 and then paid the remaining $500 in installments. There was no contact between Mr. Woods or the Lees until late June of 1986 when Mr. Woods' secretary suggested to him that something be done in the case due to the numerous phone calls that they were receiving from the Lees. It was then affidavits were prepared and the Lees called in to sign them. However, the names were misspelled and no further execution of the documents was ever attempted. The record before this court contains no credible evidence which demonstrates that any paper work was completed or any documents filed in furtherance of the completion of the succession. The parties contracted for a specific service and a specific price. Although there was no written agreement between the parties, it is clear that B.J. Woods agreed to undertake completion of the succession after being paid a substantial amount of money. While he asserted at trial that he did not do the work because the Lees had not paid the entire amount of his fee, we are unconvinced that this fact alone is sufficient to excuse his inaction. We do not believe that the mere preparation of documents at the insistence of a secretary can in any way be equated to $1350 worth of legal work. Nor can it be believed that this act was done in an attempt to expedite the closing of the succession. Rather, the evidence suggests that the meeting with these clients was hastily called in an effort to appease them and to delay the entire process. Certainly, there was ample time to complete the necessary documents during a nine-month period.
We distinguish Montgomery v. Jack, 556 So.2d 267 (La.App. 2d Cir.1990), writ denied, 559 So.2d 1377 (La.1990), in comparison to the present case. In Montgomery, the plaintiff, an inmate at Louisiana State Penitentiary at Angola, employed counsel to handle a writ application to the Louisiana Supreme Court. Counsel wrote plaintiff and informed him that he was preparing "the writ of the century." After investigating the case, however, the attorney never prepared the writ for the plaintiff and the plaintiff eventually filed his own writ application. Montgomery filed an action for damages against the attorney and his liability insurer. Defendant-attorney filed a peremptory exception of prescription contending that the alleged negligent conduct had occurred more than one year prior to the filing of the action and the plaintiff's claim against the defendant had prescribed. The court addressed the issue of whether or not the ten-year or the one-year prescriptive period applied and determined that under those facts, the one-year standard applied. The court reasoned that because the defendant had launched an extensive investigation into the plaintiff's claim of ineffective assistance of counsel by contacting and interviewing numerous witnesses and had also investigated the manner in which the plaintiff's defense was handled at trial, an essential step in fulfilling his obligation had been performed. The court held that when an attorney undertakes an obligation to prepare a certain written document, it is implied that he will conduct the necessary investigation and research so as to prepare an appropriate and effective document. Under those conditions, the court found that clearly the attorney had done something to fulfill his duty. By comparison, this case does not present one in which the attorney has done any research and/or investigation. Rather, the evidence is scant as to any work that had been done toward the contracted result over a nine-month period excepting the futile attempt at executing affidavits for the purpose of pacifying the clients. Under these facts, unlike those in Montgomery v. *1186 Jack, we find this to be a case in which an attorney has contracted to do certain work and has done nothing whatsoever in furtherance of that contract. As such, the ten-year prescriptive period applies.
We next address the issue of the application of the deductible to the facts of this case.
Insurance contracts are to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. If there is an ambiguity in a policy, the ambiguity should be construed in favor of the insured and against the insurer; however, the courts have no authority to alter provisions of the policies under guise of contractual interpretation when the policy provisions are couched in unambiguous language. Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988).
Section I(A) of the policy, Insuring Clauses, states in pertinent part:
To pay on behalf of the Insured all claim expenses and all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages as a result of claims first made against the Insured during the Policy Period....
Section V of the policy, Limits of Liability, states that the deductible "shall be paid by the Named Insured and shall be due within thirty (30) days upon written demand by the Company." Our reading of these two provisions in conjunction with one another reveals an ambiguity in the policy provision. While the insuring clause seems to indicate that the insurance company will only pay those sums in excess of the deductible, the limits of liability suggest that the insured reimburses to the insurance company the amount of the deductible when payment is made. The specific provisions of the contract do not provide who shall actually pay for the deductible, but are rather couched in generic terms. Because this ambiguity is construed against the insurer and in favor of the insured, we find that a reasonable construction of the terms provides that the insurance company is responsible for any amount of liability under the policy and is thereafter, by the terms of its own policy, mandated to make written demand upon its insured for reimbursement of any amounts paid. Moreover, defendant adduced no evidence to prove that the deductible had not already been satisfied for the year of plaintiffs' claim.
Plaintiffs argue the application of the deductible as an affirmative defense which must be plead or considered waived. They assert that the failure by New England to plead the deductible as such is fatal to their claim of its application. We disagree. A review of Louisiana Code of Civil Procedure Article 1005 setting forth a listing of affirmative defenses does not include the application of a deductible. While the list enumerated under this article is not exhaustive, our research on this issue reveals no case law which determines that the application of a deductible must be plead as an affirmative defense.
An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action which will have the effect of defeating plaintiff's demand on the merits. Keller v. Amedeo, 512 So.2d 385 (La.1987); Webster v. Rushing, 316 So.2d 111 (La. 1985). We cannot determine that the deductible provision in this case qualifies as an affirmative defense. The lack of jurisprudence on the issue as well as the exclusion of deductible in Louisiana Code of Civil Procedure Article 1005 is persuasive in our determination. Secondly, the deductible provision is clearly a part of the contract around which the entire lawsuit is based. As such, its application forms a part of the trial without the necessity of it being separately pled.
Finally, appellant argues that the claim by the Lees against B.J. Woods is excluded under the provisions of the policy which provide as follows:
This policy shall not indemnify the Insured for any damages or claim expenses as the result of any claim:
(A) that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent....
*1187 We fail to find merit to New England's claim. Where the language of a policy is clear and free of ambiguity, it constitutes a contract between the parties and must be enforced as written. Fruge v. First Continental Life and Accident Insurance Company, 430 So.2d 1072 (La.App. 4th Cir. 1983), writ denied, 438 So.2d 573 (La.1983); Freyoux v. Estate of Bousegard, 484 So.2d 761, writ denied, 486 So.2d 753 (La.1986). The quoted exclusion applies only if there is a final adjudication of a dishonest, fraudulent, or malicious act. There have been no claims made against B.J. Woods in this case or by way of a separate civil suit or criminal proceeding based upon the present facts; thus there is no final adjudication as required by the quoted exclusion. Under the clear wording of the contract, the exclusion does not apply. Additionally, the trial court expressly found that B.J. Woods did not act with deliberate purpose and intent to commit dishonest, fraudulent, or malicious acts, errors, omissions, or personal injury. Such a finding is not clearly wrong; thus the exclusion does not apply.
The record does not indicate whether or not the judgment included the $500 amount requested for attorney's fees. Attorney's fees are not allowed except when authorized by statute or contract. Huddleston v. Bossier Bank and Trust Company, 475 So.2d 1082 (La.1985); Quealy v. Paine, Webber, Jackson, and Curtis, Inc., 475 So.2d 756 (La.1985). We find no provision in the contract or in a statute authorizing attorney's fees in this case. The award should not include attorney's fees. We do find however, that damages should be assessed in the amount of $1850, the actual amount paid by the Lees to B.J. Woods. We shall affirm the judgment because the trial court awarded $1850 to plaintiffs.

CONCLUSION
At defendant's costs, the judgment of the trial court is affirmed.
AFFIRMED.
SEXTON, J., concurs.