594 So.2d 541 (1992)
Judith Tracy, Wife of/and Brian TRACY
v.
TRAVELERS INSURANCE COMPANIES and First State Insurance Co. & the Parish of Jefferson.
No. 91-CA-383.
Court of Appeal of Louisiana, Fifth Circuit.
January 31, 1992.
Writ Denied April 10, 1992.
David C. Treen, Charles K. Reasonover & Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, & Edmund W. Golden, Asst. Parish Atty., Parish of Jefferson, Harahan, for Parish of Jefferson defendant-appellant.
John G. Gomila, Jr., Donna Powe Green, Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, New Orleans, for Travelers Ins. Companies defendant-appellee.
Marc W. Judice, Lafayette, for First State Ins. Co.
*542 Before BOWES and DUFRESNE, JJ., and ELORA C. FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
This is a declaratory judgment suit in which the Parish of Jefferson, defendant/intervenor, appeals two separate summary judgments which exonerate the Parish's co-defendants, Travelers Insurance Company and First State Insurance Company, from liability for coverage of an accident that resulted in the Parish's paying an award to the plaintiffs of $1,600,000. For the reasons that follow, we reverse the judgments and render judgment in favor of the Parish.

FACTS
Plaintiff, Brian Tracy, was injured on February 12, 1984 when he stepped on the loose cover of an underground water meter in a grassy area between the paved walkway and the street in front of a Metairie home. On August 14, 1984 Tracy and his wife, Judith, brought suit against the Parish of Jefferson, the homeowner, and the manufacturer of the water meter cover.
Ultimately the district court rendered judgment against the Parish in favor of the plaintiffs in the amount of $1,126,319.79, plus interest. That decision was affirmed by this Court in Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5 Cir.1988). The Louisiana Supreme Court denied writs and refused to reconsider the writ denial. Tracy v. Jefferson Parish, 530 So.2d 569, reconsideration denied, 532 So.2d 141 (La. 1988).
At the time of the accident the Parish had a comprehensive general liability insurance policy with Travelers with coverage up to $500,000 and excess umbrella coverage with First State up to an additional $35 million. On March 26, 1985 Travelers advised the Parish that it was denying coverage for the accident on the ground that the accident occurred on a sidewalk and the policy excluded coverage for sidewalks.
While the litigation was pending, the Parish renewed its coverage with Travelers. Beginning in 1985, Travelers changed the wording of its endorsement to state specifically that coverage is not provided for "water meter covers."
Tracy filed the current suit against Travelers and the Parish, seeking a declaratory judgment that his accident was covered under the Travelers policy, and later amended his petition to add First State as a defendant. The Parish filed a petition in intervention, also seeking a declaration of coverage, and then settled with the plaintiffs for $1,600,000. The case thereafter proceeded on the Parish's claim against the insurers.
Travelers moved for summary judgment on the ground there was no general liability coverage for this accident by reason of the sidewalk exclusion in its policy. The Parish filed a cross-motion for summary judgment, asserting the sidewalk exclusion did not apply because Tracy's accident occurred on a water meter cover, not a sidewalk, and the Travelers policy did not specifically exclude water meter covers.
On May 25, 1990, the district court ruled that Travelers was entitled to summary judgment based on the sidewalk exclusion. On July 6, 1990 judgment was rendered granting Travelers' motion and denying that of the Parish. From that judgment the Parish filed a timely motion for devolutive appeal, which was granted on August 28, 1990.
First State also had moved for summary judgment, on the grounds that its policy also contained a sidewalk exclusion and also that the Parish failed to give it proper notice of the claim based on Tracy's accident. The district court ruled in First State's favor and rendered judgment on December 18, 1990. From that judgment the Parish also filed a devolutive appeal, which was granted on January 4, 1991. The appeals were lodged with this Court at the same time and thus have been filed under one case number.

ISSUES ON APPEAL
On appeal the Parish assigns as errors the district court's findings that Tracy's accident occurred on a "sidewalk" within the meaning of the sidewalk exclusion in *543 Travelers' general liability policy and that coverage under First State's umbrella liability policy was precluded by the sidewalk exclusion and/or by the Parish's failure to notify First State of a claim arising from Tracy's accident.
These assignments of error raise two issues for review:
(1) Whether a liability insurance policy excluding coverage for any claim or liability arising out of the existence or operation of a sidewalk also excludes coverage for an accident occurring on a water meter cover located in a grassy area between a concrete sidewalk and a street; and
(2) Whether an insurer is entitled to summary judgment based upon an insured's failure to give notice of a claim if the pleadings, depositions, answers to interrogatories, and admissions on file show that the insurer had actual notice of the claim, that the insurer would have denied coverage even if it had received notice from the insured, or that the insurer was not actually prejudiced by the lack of notice.

APPLICABILITY OF SIDEWALK EXCLUSION
The exclusion in Travelers' policy is contained in Endorsement 8000(8), which states, in pertinent part:

It is agreed that no insurance is afforded by the policy for any claim or liability arising out of the existence or operation of any of the below listed items, which are owned or maintained by the named insured. Highways, roads, streets, sidewalks, bridges other than drawbridges, culverts, neutral grounds, center grounds, center boulevards or the following while adjacent to or situated above any of the foregoingparking meters, traffic lights, traffic signals, traffic signs, street signs, benches, decorations, public refuse receptacles, light poles, telephone poles, electric power poles, trees, water hydrants and alarm boxes. Notwithstanding anything to the contrary contained above, this policy does afford insurance for construction, re-construction, erection, installation and maintenance operations performed by or on behalf of the named insured on the above designated items, but only while the construction, re-construction, erection, installation and maintenance operations are being conducted by or on behalf of the named insured. [Emphasis in original deleted; emphasis shown added.]
The First State policy contains an identical exclusion.
In arguing their motion, the insurers relied on the following definition of "sidewalk" from the Jefferson Parish Code of Ordinances, § 1-2:
Unless otherwise provided, the term "sidewalk" shall be construed to mean that portion of a street or street right-of-way between the curb line or lateral line of a roadway and the adjacent property line, intended for use of pedestrians. [Emphasis added.]
In oral reasons for judgment the judge stated that the cover was located in the grassy area between the paved walkway and the street and that coverage exists because the water meter cover is in the "territory area of the sidewalk."
He also cited Labruzza v. Boston Insurance Company, 198 So.2d 436 (La.App. 4 Cir.1967), a case in which the plaintiffs sued for injuries sustained by Mrs. Labruzza when she stepped into a drain clean-out opening that had a broken cover. The insurer in that case was granted summary judgment on the basis of a sidewalk exclusion in the policy and the Fourth Circuit affirmed the ruling, holding that a grassy section between the paved portion of the sidewalk and the street curbing, when used by pedestrians, is a sidewalk. In making this holding they relied on a definition in a parish ordinance similar to the one here.
The trial judge held further that it is proper to use the Parish's Code of Ordinances to determine the meaning of "sidewalk."
We find the trial court erred.
The principles applicable to construction of insurance policies are not disputed. In case of ambiguity, the policy *544 provisions are construed most favorably to the insured and against the insurer. Of the permissible constructions, the courts adopt that which effectuates the insurance over that which defeats it.
Snell v. Stein, 261 La. 358, 259 So.2d 876, 878 (1972).
Although an insurance company has a right to limit its liability, "the limitation on coverage must be clear and express in order to inform the insured he must take special measures to obtain protection. * * * In so determining, those words are to be understood in their common and usual significance without attending so much to grammatical rules as to general and popular use." Hebert v. First American Ins. Co., 461 So.2d 1141, 1143 (La.App. 5 Cir.1984).
"Exclusions are read strictly in favor of the insured. Where more than one interpretation of an exclusion is reasonable, that affording coverage must be adopted." Rovira v. LaGoDa, Inc., 551 So.2d 790, 792 (La.App. 5 Cir.1989), writs denied, 556 So.2d 36 (La.1990).
Applying these principles to the case before us, we conclude the trial court erred in finding that the water meter cover was part of the sidewalk for purposes of the exclusionary clause.
We agree with the appellant's contention that, "[a]s generally and popularly used, there can be no doubt but that the term `sidewalk' is understood to be the paved walkway which parallels the street, not the grassy area between the street and the sidewalk." The Parish cites dictionary definitions that support this assertion:
[A] walk for foot passengers usually at the side of a street or roadway; a foot pavement. [Webster's Third New International Dictionary 2113.]
That part of a public street or highway designed for the use of pedestrians, being exclusively reserved for them, and constructed somewhat differently than other portions of the street. [Black's Law Dictionary 712 (5th ed. 1979).]
In addition, other sections of the Parish Code of Ordinances define "sidewalk" in different terms than § 1-2. At the time of Tracy's accident, in addition to the definition set forth in § 1-2, the Code defined "sidewalk" in § 15-9 as "a concrete pedestrian walkway in that portion of a street right-of-way between the curb lines of a roadway and the adjacent property lines." Subsequently § 15-9 was deleted, but the same definition was included in § 29-142, which defines "sidewalk" as "a concrete banquette or concrete pedestrian walkway in that portion of a street or street right-of-way or adjacent thereto defined as the sidewalk space." Section 29-142 defines "sidewalk space" as "that portion of a street or street right-of-way between the curb line or the lateral line of a roadway and the adjacent property line; the term shall also, whenever applicable, mean that portion of a servitude adjacent to a street or street right-of-way, designated for utilities, sidewalks or other public use."
We conclude that, absent some language in the policy that adopts and incorporates the definition from § 1-2 of the Parish Code of Ordinances as part of the policy, that definition may not be used to establish the meaning of the terms used by the insurer. Rather, the well-established principles of insurance contract interpretation cited above must be applied; the words used in the policy must be interpreted in their usual and ordinary sense.
Further, the word "sidewalk" is ambiguous if it is intended to include water meter covers, which can be viewed neither as part of the sidewalk nor as contributing to the purpose of an area "intended for the use of pedestrians." In fact, as can be seen from the language of Travelers' Endorsement 8000(8), quoted above, although the endorsement lists numerous specific items that are excluded from coverage (e.g., parking meters, traffic lights, water hydrants, etc.), it did not include water meter covers in the excluded list until after the accident made the basis of this suit.
In addition, the fact that several possible meanings of "sidewalk" are proffered is a prime indicator that the term is ambiguous and, thus, must be construed in favor of coverage.
As to the Labruzza case, we respectfully decline to follow it. That case is distinguishable *545 because the court failed to apply the principles of insurance law to interpret the policy; further, we are not bound by the rulings of the Fourth Circuit.
Accordingly, we find that the Parish was entitled to summary judgment in its favor on the coverage issue.

EFFECT OF FAILURE TO GIVE NOTICE OF CLAIM
In addition to relying on the sidewalk exclusion, First State sought summary judgment on the basis that the Parish allegedly failed to notify First State that a claim had been made or a legal proceeding commenced against the Parish arising out of Brian Tracy's accident, as required by Condition D of First State's policy:
D. Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.
The Parish claims the sole basis for First State's argument was that, "in response to interrogatories propounded by First State, the Parish stated that it did not know who gave notice to First State, and Travelers responded that it did not give notice to First State." However, the Parish asserts, there was nothing else to establish that First State did not have actual notice of the suit and, therefore, a factual issue exists as to whether First State had actual notice.
First State claims it was not notified of the claim against it until after the first case had been litigated and the judgment made final. However, Condition E of its policy provides that no action shall lie against the company unless the insured first has fully complied with all the terms of the policy, "nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY."
Thus, regardless of whether First State received notice prior to the filing of the suit against the Parish, the Parish could not have sued First State until the first lawsuit was resolved. In Fakouri v. Insurance Company of North America, 378 So.2d 1083 (La.App. 3 Cir.1979), a similar provision was interpreted as negating a claim by an excess insurer that it was relieved of liability for lack of notice.
Our Supreme Court has held that as long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial. Sevier v. U.S.F. & G., 497 So.2d 1380 (La.1986).
In Pomares v. Kansas City Southern Ry. Co., 474 So.2d 976 (La.App. 5 Cir.1985), this Court held that an insurer may not raise the non-prejudicial failure of the insured to give proper notice of a suit as a defense to valid claims by a third party and, thus, an insurer could not deny coverage for this reason.
Further, in Rovira v. LaGoDa, Inc., supra, we held that a duty to defend arises when an insurer receives notice of litigation and that delayed notice of a claim relieves an insurer of its obligation if the insurer suffered actual prejudice by the delay.
We conclude there were material issues of fact regarding the question of notice to First Stateto wit, whether First State in fact had actual notice of the claim and, if not, whether First State was prejudiced by delayed notice. Accordingly, summary judgment was inappropriate.
Rather than remand for trial on this issue, however, we conclude that the Parish is entitled to judgment in its favor on the *546 ground it was not required to give notice because to do so would have been a futile act. First State's primary argument has been the denial of coverage due to the sidewalk exclusion. When a insurer denies liability for a claim under an insurance policy, it abandons its right to compel the claimant to comply with the preliminary provisions of the policy required the furnishing of proof of loss. Robicheaux v. Calvert Fire Insurance Co., 171 So.2d 264 (La.App. 1 Cir.1965). Thus, where the insurer would deny liability notice would be a vain and useless action. Benoit v. American Mutual Insurance Company of Boston, 236 So.2d 674 (La.App. 3 Cir.1970), writ denied, 256 La. 874, 239 So.2d 366 (1970).

DECREE
For the foregoing reasons, the judgments of the district court in favor of Travelers Insurance Company and First State Insurance Company are reversed. Judgment is hereby rendered in favor of the appellant, the Parish of Jefferson, and against the appellees, Travelers Insurance Company and First State Insurance Company, finding them liable under their policies for the demand made by the Parish of Jefferson herein. All costs are assessed against the appellees.
REVERSED AND RENDERED.