1MURRAY, Judge.
St. Paul Reinsurance Co., Ltd. and its related insurers (hereafter referred to collectively as Underwriters) assert that the trial court erred in denying their motion for summary judgment against the insured, the Orleans Levee District (the District), for payment of a $50,000 deductible. For the reasons that follow, we grant the writ of review, reverse the judgment in part, and remand for further proceedings.
The underlying litigation originated on August 22, 1996, when an individual the District was trying to subdue broke away, stole a District police vehicle, and crashed head-on into a car driven by Ms. Dlaine *76 Thomas. As a result, Ms. Thomas filed CDC # 97-14787 against the District and its insurers, including Underwriters, who had issued a law enforcement professional liability policy. Underwriters denied coverage, in part because the policy contained a motor vehicle exclusion, so the District filed a third-party demand against Underwriters for coverage and a defense. Underwriters moved for a summary judgment declaring there was no ^coverage under the policy, but the motion was denied, and this court declined to review that denial on a supervisory writ.[1]
On September 15, 1999, counsel for the District wrote to Underwriters’ counsel stating that the District “calls upon your clients ... to settle this matter at the [upcoming] mediation and extract their insured from this serious lawsuit.... [S]hould they decline to make a meaningful contribution to settlement ... the Levee District will hold them responsible for all consequences.” It was further asserted that the denial of coverage “constitutes unreasonable and bad faith behavior” that would be pursued by separate litigation if necessary.
By written response the next day, Underwriters’ attorney agreed to attend the mediation “in the good-faith attempt to settle the plaintiffs’ claims and extract the Levee District as well as Underwriters from this lawsuit.” Underwriters’ counsel noted that there was a $50,000 deductible in the policy, including claims expenses, and asked for “the total amount of expenses incurred in defending the claims of the plaintiffs ... as opposed to litigating coverage issues.”
A mediation conference was apparently held September 27, 1999, after which, on September 28th, the District’s counsel wrote a letter to Underwriters’ attorney that has not been included in the materials submitted to this court. Underwriters’ response, a letter dated September 29th, states that it appeared the Thomas family would be accepting a settlement offered on behalf of the District, but the District’s “refusal to pay any amount towards its deductible and its refusal to assist in effecting settlement” constituted a breach of the District’s duties under the policy and jeopardized settlement of the case. The District was again asked to Lfurnish the amount expended to defend the claim but not to dispute the coverage issue.
Subsequently, Underwriters filed CDC suit #2000-6986 against the District, asserting that because Underwriters had paid $85,000 to obtain the District’s dismissal from the Thomas’ litigation, the District owed its $50,000 deductible under the policy. The District asserted in response that although it had been dismissed from the underlying suit, it had neither participated in, nor been informed of, the alleged settlement, and that because Underwriters had acted in bad faith by denying coverage, they were precluded from enforcing any policy provision regarding a deductible. In early December 2000, after the two suits had been consolidated, Underwriters moved for summary judgment and the District opposed. After a hearing on January 12, 2001, the motion was denied by the trial court without written reasons. This writ application followed.
Underwriters argue that there are no disputed issues of material fact and, because they complied with the District’s demand that they settle the underlying suit, they are entitled as a matter of law to recover the $50,000 deductible from their *77 insured. In support, they rely on the principle that where the insurer settles a claim under a policy granting it the discretion to do so, then the insured is obligated to comply with the deductible provisions of the policy, as in Employers’ Surplus Line Ins. Co. v. City of Baton Rouge, 362 So.2d 561 (La.1978). Underwriters assert that while the result in Surplus Line was the denial of the insurer’s motion for summary judgment based upon a factual dispute regarding the insured’s consent to the settlement, there is no such issue here in view of the evidence that the District demanded that the claim be settled. Therefore, Underwriters claim denial of the motion for summary judgment was erroneous.
4The District responds that just like in Surplus Line, there is a material factual dispute in this case as to whether it consented to the settlement of the claims against it, as evidenced by its attorney’s affidavit to that effect. The District further contends that under Thomas W. Hooley & Sons v. Zurich Gen. Accident & Liab. Co., 235 La. 289, 103 So.2d 449 (1958), and subsequent cases, Underwriters’ wrongful denial of coverage results in the forfeiture of any right to enforce policy provisions against its insured. Finally, the District maintains that because the policy at issue contains conflicting provisions regarding the deductible, it cannot be said that Underwriters is entitled to judgment as a matter of law on the ambiguous policy language.[2] Therefore, the District argues, the motion for summary judgment was properly denied.
The policy at issue provides in pertinent part as follows:
I. INSURING AGREEMENT AND CLAIMS MADE CLAUSE
* * *
The Underwriters have the right but not the duty to defend any such CLAIM or suit arising out of the perils enumerated above brought against the INSURED, ... even if a suit is groundless, false or fraudulent. The Underwriters shall have the right to make such investigation and settlement of any CLAIM or suit as may be deemed expedient by the Underwriters....
* * *
IX. CONDITIONS
[[Image here]]
E. Subrogation — .... The Underwriters shall be entitled to take over and conduct in the name of the INSURED, the defense of any CLAIM or action and to prosecute in the INSURED’S name for their own benefit .any CLAIM to which they are subrogated hereby against any third party. The Underwriters may settle any CLAIM at their own discretion and without the consent of the INSURED.
[Emphasis added.] These policy provisions, as did the policy at issue in Surplus Line, 362 So.2d at 564, explicitly grant to Underwriters the unilateral authority to [litigate or to settle a claim asserted against the District. However, the Underwriters’ policy does not contain an endorsement similar to the one contained in the policy considered by the Surplus Line court, which was held to require the insured’s consent to settlement in order for the deductible to be owed. 362 So.2d at 564-65. To the contrary, the entire deductible provision of this policy provides that:
*78 The Deductible amount stated in the Declarations as Deductible shall be applicable to each CLAIM and shall include loss payments and CLAIMS EXPENSES as hereinafter defined, whether or not loss payment is made. The determination by the Underwriters as to the reasonableness of the CLAIM settlements and CLAIMS EXPENSES shall be conclusive on the INSURED.
The language of the policy at issue here does not support the District’s argument that summary judgment is inappropriate until it is established that it consented to the settlement of the underlying litigation.
Similarly, we reject the District’s claim that by denying coverage, Underwriters lost the right to recover the deductible amount provided in the policy. The majority of cases the District offers in support of this contention merely reiterate the well-established principle that if an insurer denies coverage “it abandons its right to compel the claimant to comply with the preliminary provisions of the policy,” such as requirements for notice and proof of loss, as in Hooley & Sons, supra; Patterson v. Liberty Lloyds Ins. Co., 96-2168, p. 5 (La.App. 4th Cir.3/26/97), 692 So.2d 17, 19; Tracy v. Travelers Ins. Cos., 594 So.2d 541, 546 (La.App. 5th Cir.1992); Riddle v. Allstate Ins. Co., 203 So.2d 820, 824 (La.App. 4th Cir.1967); Gibsland Supply Co. v. American Emp. Ins. Co., 242 So.2d 310, 314 (La.App. 2d Cir.1970). However, the District offers no authority | r,nor argument suggesting that a deductible can be considered such a “preliminary provision.” Furthermore, the only case cited that specifically deals with an insured’s liability for a deductible when the insurer denied coverage, Creole Explorations, Inc. v. Underwriters at Lloyd’s, London, 245 La. 927, 161 So.2d 768 (1964), was decided based on the language of the particular policy rather than on the “general principle” urged by the District.[3] We find, therefore, that Underwriters did not waive or forfeit the right to enforce the deductible provision of this policy by litigating the coverage issue.
In its final argument, the District contends that the Deductible provision quoted above is ambiguous because it does not explicitly include or define “settlements,” nor is there any policy definition of the term “loss payments.” The District further claims that this terminology conflicts with the highlighted sentence that appears in a message on the first page of the policy:

NOTICE:

THIS POLICY IS KNOWN AS A “CLAIMS MADE AND REPORTED” POLICY. THE COVERAGE AFFORDED BY THIS POLICY IS LIMITED.... DEFENSE EXPENSES ARE INCLUDED WITHIN THE LIMIT OF LIABILITY AND THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS [sic] OR SETTLEMENTS WILL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE EXPENSES. THE DEDUCTIBLE WILL BE APPLIED TO JUDGMENTS, SETTLEMENTS AND DEFENSE EXPENSES. THE INSURED SHOULD READ THE ENTIRE POLICY CAREFULLY.
Citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988), and Lee v. New England Ins. Co., 579 So.2d 1182 (La.App. 2d *79 Cir.1991), the District contends that this ambiguity must be construed against the insurer so as to prohibit recovery of the deductible.
|7It is well established that “[w]ords and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.” Reynolds v. Select Properties, Ltd., 93-1480, p. 3 (La.4/11/94), 634 So.2d 1180, 1183 (citation omitted). Moreover,
An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. An insurance contract, however, should not be interpreted in an unreasonable or strained manner ... to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists....
Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029 (emphasis added; citations omitted).
Applying these standards here, we are unable to find any ambiguity regarding the District’s liability for the deductible under these facts. According to general usage, a “loss payment” includes any funds paid to a claimant under a policy, whether by judgment or by settlement. See, e.g., Louisiana Farm Bureau v. Thompson, 98-0520, p. 7 (La.10/20/98), 719 So.2d 427, 431 (discussing the “loss payment” amounts due under two separate fire policies). Furthermore, if the parties did not intend that the deductible would apply when a claim was settled, the following statement regarding Underwriters’ authority to determine “the reasonableness of the CLAIM settlements” would be superfluous. Moreover, the explicit “NOTICE” on the first page does not contradict this interpretation, but confirms that “The deductible will be applied to judgments,- settlements and defense expenses.” Accordingly, there is no ambiguity in the policy regarding the applicability of the deductible when a claim is settled, as the District contends.
| «For these reasons, we find that Underwriters has established, as a matter of law, that the District is liable for the $50,000 deductible on the settlement at issue. However, in view of Underwriters’ apparent acknowledgment that the District is entitled to a credit for “expenses incurred in defending the claims of the plaintiffs,” the exact amount due cannot now be determined. Therefore, the trial court’s denial of summary judgment as to liability is reversed, and the matter is remanded for a determination of the amount for which judgment is to be rendered in favor of Underwriters.
WRIT GRANTED; JUDGMENT REVERSED IN PART; MATTER REMANDED.

. Another insurer’s motion for summary judgment on coverage was also rejected by this court in Thomas v. Gallant Ins. Co., 99-0126 (La.App. 4th Cir.5/5/99), 733 So.2d 1236, writ denied, 99-1603 (La.9/17/99), 747 So.2d 566 (coverage issue can be reurged on appeal).

. In the trial court, the District further argued that the motion was premature because it had not yet conducted any discovery regarding Underwriters' claims. However, this argument is not raised in the District’s opposition to Underwriters' writ application.

. Because the policy in Creole Explorations defined the deductible in terms of an "Adjusted claim,” the court held the provision inapplicable where the loss amount was determined at trial rather than by negotiations between the insured and insurer. 245 La. at 946, 161 So.2d at 775.